(Filed 21st June, 1887.)

---

## ELEANOR A. WILLIAMS *vs.* JOSEPHINE KENT.

*Landlord and Tenant—Hydraulic Elevator—Water rate—
Parol evidence—Written agreement to Lease.*

In the absence of an agreement to that effect, in the lease, the landlord is under no obligation to pay the water-rate for running an hydraulic elevator placed in the leased building at the special request of the tenant, and used exclusively for her benefit and accommodation.

Where the lessor and lessee enter into a written agreement for the rent of property at a specified sum, parol evidence is inadmissible, either for the purpose of increasing or diminishing the sum so agreed upon. The written contract must speak for itself.

Williams *vs.* Kent.

APPEAL from the Circuit Court for Baltimore County.

This suit was brought against the appellant by the appellee, to recover the amount of certain water bills, which she had paid to the Water Registrar of the City of Baltimore, for the running of an hydraulic elevator used in the "Albion Hotel," which she had rented of the appellant. The case is further stated in the opinion of the Court.

*First Exception.*—The plaintiff testifying in her own behalf, was asked by her counsel what, if any thing, was said by any of the parties about the payment of the water bills for the elevator, in any of the negotiations for the proposed improvements and additions? To the propounding of this question, or to any answer thereto, the defendant objected; but the Court, (FOWLER, J.,) overruled the objection and allowed the question to be asked. The defendant excepted.

*Second Exception.*—The plaintiff thereupon testified that it was distinctly stated by her, and so understood between them, that she, the plaintiff, was not to pay any water bills for running the elevator, and that all water bills should be at the expense of the owner of the property. To this answer the defendant objected, but the Court overruled the objection and admitted the answer. The defendant excepted.

*Third Exception.*—The plaintiff offered the three following prayers:

1. If the Court find that the plaintiff rented the Albion Hotel under the contracts given in evidence, and shall find that the plaintiff never agreed to pay any water assessments, and that the water bills were paid as stated in agreed statement of facts filed, then the law requires the defendant to pay the water assessments for water used on the premises in running the elevator, and the plaintiff is entitled to recover the sums paid, as set forth in the declaration, less $70.56, which the defendant has paid.

2. That under all the evidence offered in this case, including the Ordinances of the Mayor and City Council of Baltimore relating to water and water assessments, offered in evidence, the plaintiff is entitled to recover.

3. That there is no evidence of any agreement on the part of the plaintiff to pay any water rents for the use of the elevator on the rented premises, and in the absence of any promise or agreement on the part of the tenant, the law fixes the liability on the defendant, and the plaintiff is entitled to recover in this case.

The defendant prayed the following instructions:

1. That the written contract of lease given in evidence in this cause, is alone to govern the liability of defendant, and in the absence of any covenant or agreement on her part to pay for the water used by the elevator given in evidence, the plaintiff is not entitled to recover, and there is no such evidence.

2. That upon the pleadings and proof in the cause, the plaintiff is not entitled to recover.

The Court granted the prayers of the plaintiff and refused those of the defendant. The defendant excepted. The verdict and judgment by the Court being for the plaintiff the defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, and IRVING, J.

*Robert R. Boarman*, and *Geo. Hawkins Williams*, for the appellant.

All preliminary negotiations by parol or otherwise were merged in the ultimate sealed contract as set forth on pages 2 and 3 of the record, and said contract being merely to have an elevator placed in the premises, and it having been so placed, the contract on the part of appellant was fully performed; and all parol evidence to extend the obligation of the contract beyond its words, or

Williams *vs.* Kent.

in any manner to add thereto, was clearly inadmissible. *Warren Glass Works vs. Keystone Coal Co.*, 65 *Md.*, 548.

Whilst a landlord is obliged by the city ordinances as authorized by the law of the State to pay the assessment or water tax for public uses of water, yet the tenant is obliged to pay for all water rented for his own purposes, such as steam engines, elevators and so forth. The tax is imposed as well on vacant houses, in which no water is used, and is uniform with those that are occupied, but water rent is a wholly different thing ; for this the city has no lien, as if a tax, and when unpaid the city has but the ordinary remedy on contracts. *City Code, Art.* 53, and *Act of Assembly*, 1882, *ch.* 225.

*James W. Denny*, and *William S. Keech*, for the appellee.

The law fixes the liability on the landlord. There being no custom, and no agreement by the tenant to pay the water assessments, the law raises none by implication against her.

If the contract is silent on the subject of water assessments for the elevator, then it is admissible to prove an independent fact. If the agreement to be construed is not decisive as to the general intention of the parties, the evidence does not vary or contradict it, but enables the Court, by the light of surrounding circumstances, to understand the meaning of the contract, and to construe the agreement according to the actual intention.

The covenant on the part of the tenant to pay for gas was left, while that to pay for water was erased. Why was it done ? What was said at the time ? When a printed form is changed by additions or erasures, the change in the hand-writing of the party making it is entitled to have greater effect in the interpretation than the words printed—such change or erasure being the immediate language and terms selected by the parties. The

evidence was admissible. *Robertson vs. French,* 4 *East,.* 135; *Boarman vs. Jenkins,* 12 *Wend.,* 573; *Bladen vs.. Wells,* 30 *Md.* 578.

The Mayor and City Council of Baltimore have power to assess rates for the supply and use of water, and to en-- force payment by the same process by which city and State taxes are collected, and to pass ordinances necessary to give effect and operation to all the powers vested in the corporation. *Code of Pub. Local Laws, Art.* 4, *sec.* 33, *and sec.* 939, *amended by Acts* 1862, *chap.* 83, 1866, *chap.. 38.* 1868, *chap.* 467, 1870, *chap.* 24.

In pursuance of this power the Mayor and City Coun- cil of Baltimore have enacted laws requiring the owners of property to pay the water assessments. *Balt. City Code,* 1879, *Art.* 53, *sec.* 21.

*Phila. & Wil. R. R. vs. Appeal Tax Court,* 50 *Md.,* 511. In this case, this Court says: " The general principle certainly is, that, when the lease is silent upon the subject,. the landlord is bound to pay all State and municipal taxes and assessments upon the property." *Balto. City Code,* 1879, *Art.* 53, *secs.* 19, 48; 6 *Duer,* 262; *Smith's Landlord & Tenant, (Ed.* 1856,) *top pages* 261–268, *and cases cited.*

"The landlord is bound to *guarantee* the tenant against the disturbance which would be occasioned by some person enforcing a charge which the lessor ought to have satisfied; and tenant can maintain an action against the landlord for the same." *Smith's Landlord and Tenant,* 265; *Hancock vs. Caffyn,* 8 *Bing.,* 358; *Burnett vs. Lynch,* 8 *Dowling & R.,* 368; *Dawson vs. Dyer,* 5 *Barn. & Ad.,* 584; *Code, Art.* 81, *sec.* 73.

" Upon the whole, the law on this subject may be summed up by saying that the landlord, in the absence of express agreement, is under an implied obligation to in- demnify the tenant against eviction or disturbance by his own act or the acts .of those who claim under or para- mount to him." *Smith's Land. & Tenant, top page,* 268..

Williams *vs.* Kent.

ROBINSON, J., delivered the opinion of the Court.

The appellant let the *"Albion Hotel"* to the appellee, for a term of three years, at an annual rent of $3400. During the first year's tenancy, a *hydraulic elevator* was put in the building, and other improvements were made by the appellant at the request of the appellee. Besides these improvements, the appellee wanted the use of a room on the first floor of the Hotel, which had been rented as a store-room, and which was not included in the lease; and also the use of a dwelling house adjoining the Hotel and which belonged to the appellant. In consideration of the improvements thus made, and the use of the store-room and dwelling house, the appellee agreed to pay a yearly rent of $4500, being $1100 more than the rent agreed upon in the original lease.

The elevator is run by water, and the water rates for the use of the water, amount to nearly *seven hundred dollars a year.* Nothing is said in the original lease, nor in the subsequent modification thereof, about the payment of water assessments, but the City Code provides that these assessments may be collected in the same manner as city taxes, and being obliged as tenant to pay the same, the appellee contends she is entitled to recover of the appellant as landlord, the amount thus paid by her. The liability of the appellant as landlord for the payment of the *usual and ordinary water rates,* which by the City Code are assessed according to the front feet of the dwelling house or building, is not denied, but in the absence of an agreement to that effect, it is contended there is no implied obligation on the part of the appellant as landlord to pay for the extraordinary use of water in large quantities, such as is required in running an elevator. Here the elevator was put in the building at the special request of the tenant, and is used exclusively for her benefit and accommodation. Where water is thus used in large quantities the City Code provides that the quantity shall

be ascertained by meter, the charge being at so much per hundred gallons; and the Act of 1882, chap. 225, authorizes the city authorities in such cases to make special contracts with persons or corporations, on such terms as they may deem proper. It might just as well be contended that there is an implied obligation on the part of a landlord to pay for water used by a steam engine for heating, or for any other purpose for the exclusive benefit of the tenant. By denying the liability of the appellant for the water rates charged in running the elevator, no injustice is done to the appellee in this case. By the original lease she agreed to pay a rent of $3400 a year. The improvements made by the appellant at her request, cost $6900, the interest on which is $414 per annum, and the annual rents of the store-room and dwelling house amounted to $1360, thus making the value of the additions $1774 a year. In consideration of which she agreed to pay an increase of rent of only $1100. Now if the appellant is to pay $650, the yearly water rates for water used in running the elevator, instead of $1100, she would get but $450 a year. But be this as it may, we see no ground on which the liability of the appellant in this case can be maintained for water used in running the elevator.

The written agreement between the parties being for the payment of $4500 a year for the demised premises, the appellee offered to prove, that during the negotiations for the proposed improvements and additions, the appellant verbally agreed to pay the water assessments for running the elevator. This evidence was clearly inadmissible. The agreement between the parties was reduced to writing, and parol evidence was not admissible for the purpose of contradicting or varying the written contract. It is well settled, that where the lessor and lessee enter into a written agreement for the rent of property for a sum specified, parol evidence will not be received, either for the purpose of increasing or diminishing the sum so agreed upon. The written contract must speak for itself.

Thus in *Preston vs. Merceau*, 2 *Wm. Black.*, 1249, where there was a written agreement for a lease, by the terms of which the tenant was to pay a stated rent of £26 a year, parol evidence was held to be inadmissible to prove that the tenant in addition to the £26 agreed to pay also the ground rent on the premises, amounting to £2 12s. 6d. BLACKSTONE, J., said, "I am clearly of opinion that the Lord Chief Justice did right in rejecting this evidence. Here is a positive agreement that the tenant shall pay £26. Shall we admit proof that this means £28 12s. 6d.? We can neither alter the rent nor the term, the two things expressed in this agreement. With respect to collateral matters it might be different. He might show who is to put the house in repair, or the like concerning which nothing is said; but he cannot by parol evidence shorten the term to fourteen years or extend it to twenty-five years, or make the rent other than £26 *per annum.*" And so in *Greaves vs. Ashlin*, 3 *Camp.*, 426, where the memorandum of agreement specified the rent and terms, but omitted the words "clear of taxes," the Court would not admit parol evidence to show that the rent was to be paid clear of taxes. The question was also fully considered in *Rich vs. Jackson*, 4 *Brown Chan.*, 513, and reported in note to *Townshend vs. Stangroom*, 6 *Ves., Jr.*, 333. In that case there was a written agreement for a lease for twenty-one years, at a rental of £84 per annum. The tenant being obliged to pay £16 8s. land tax, and the assignee of the lessor having refused to allow the same in payment of rent, suit was brought in the Court of Common Pleas against the assignee to recover the amount thus paid, and parol evidence was offered to prove the tenant agreed to pay £84 a year clear of taxes; but the Court held the evidence to be inadmissible, and directed verdict to be given for the plaintiff for £16. Afterwards, upon a bill for specific performance of the verbal agreement filed by the assignee of the lessor, the Lord Chancellor said, " The Court of Common Pleas

rejected the parol evidence very properly. The parties, whatever had been the communication between them, had executed the matter by signing a written agreement. The construction of that agreement, it is impossible to doubt. It is a lease for twenty-one years at a rent of eighty guineas, is to paid twenty guineas quarterly. The execution of that undoubtedly is, that the tenant paying the rent pays twenty guineas, so much in money, and his land tax receipt, making up the twenty guineas. That being the certain, clear effect of the instrument, makes the whole of the contract upon the condition of that letting." So here by the written agreement between the parties, the appellee agreed to pay a rent of $4500 a year, and parol evidence is not admissible to show that either before or at the time the contract was signed, the appellant agreed the appellee should pay $4500, less $650, the water-rates for water used in running the elevator.

Cases may be found in which parol evidence has been admitted to prove a collateral agreement between the parties, provided it be not inconsistent with the terms of the written contract. As, for instance, where a lessor promises to put a house in repair, if the tenant will agree to rent the same. In such a case, the agreement is collateral; and in an action for a breach of it, parol evidence may be admitted to prove the parol collateral agreement. *Mann vs. Nunn,* 43 *L. J. C. P.,* 241 ; *Angell vs. Duke, L. R.,* 10 *Q. B.,* 174. But such evidence will not be admitted if it be inconsistent with the written agreement between the parties.

The Court erred therefore in admitting the evidence offered by the appellee, and also in granting the several prayers of the appellee, and in refusing the prayer offered by the appellant.

*Judgment reversed.*

(Decided 21st June, 1887.)


ALVEY, C. J., dissented on the second exception.