THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.*
CLEMENTINE ULMAN, by her Husband and next
friend, ALFRED J. ULMAN.

*Street Improvements—Legislative Power—Special Benefits*
*— Valid Ordinance—Misrecital in Ordinance—Power*
*to Sell to collect Assessment.*

Where a street has been paved, and the expense against the prop-
erty benefited has been assessed under an ordinance subse-
quently declared void, the Legislature has power to authorize
the city to levy special assessments against such property to
the extent of the special benefits derived by said property.

The Act of 1892, ch. 284, which authorizes the Mayor and City
Council of Baltimore " to provide by ordinance for the levy and
collection, in such manner as they may deem proper, of a tax
upon all the property binding on any street, lane or alley, or part
thereof which may have been so improved, to the extent that
such property shall have been specially benefited by such im-
provement; provided that no property upon which the assess-
ment originally made for its share of the cost of such improve-
ment shall have been paid, shall be again assessed," is not void
as to uncertainty in the amount to be assessed, the Act itself
providing how such amount shall be definitely determined.

Ordinance No. 84 of 1893 of the City of Baltimore, provides that
the City Commissioner shall give ten days' notice in two of the
daily newspapers published in Baltimore that at the time and
place mentioned he would ascertain and determine the amount
of tax to be assessed upon all the property on North avenue,
between certain points, upon which the assessment levied under
Ordinance No. 100 had not been paid, for the special benefits
which had been derived by said property from the grading, &c.,
of said portion of North avenue; that after hearing all persons
interested, who desired to be heard, he shall proceed to appor-
tion among different pieces of property binding on said portion
of North avenue, upon which the assessment levied under Or-
dinance No. 100 was not paid, the total cost of the grading, &c.,
of said portion of North avenue, less the amount paid by those
who had paid under Ordinance No. 100, provided the tax as-
sessed against any piece of property should not be more than
the amount which the said property had been specially bene-

fited by the grading, &c., of said portion of North avenue. The ordinance further provides that any person dissatisfied with any assessment in which he was in any manner interested could appeal to the Baltimore City Court, where the proceedings should be similar to those in the case of trials of street appeals, and the same right should be had to appeal to the Court of Appeals. HELD:

That Ordinance No. 84, is not unconstitutional and void as taking property without due process of law.

The Act of 1892, ch. 219, gives the Mayor and City Council of Baltimore power to provide by ordinance for improving streets, and for assessing the cost of any such work, in whole or in part, upon the property binding upon such streets, and for collecting the assessments, provided that before the passage of such ordinance, ten days' notice shall be given. The Act of 1892, ch. 284, passed a few days later, provides for the assessment and collection of the costs for public improvements already made by the city. HELD:

That the ten days' notice required by the former Act is not applicable to an ordinance passed in pursuance of the latter.

A misrecital in an ordinance of the source of the power of the municipality to pass such ordinance, does not affect its validity if the power to enact it existed.

The Act of 1892, ch. 284, authorized the Mayor and City Council of Baltimore " to provide by ordinance for the levy and collection in such manner as they may deem proper, of a tax upon all the property binding on any street * * * which may have been so improved, to the extent that such property shall have been specially benefited by such improvement." Ordinance No. 84 of 1893, of the City of Baltimore, after requiring the list of the property and of the owners thereof liable to pay the tax, and the amount to be paid by each piece of property, to be placed in the hands of the City Collector, directed him " thereupon to proceed in all respects as he does in cases where persons or property are assessed for benefits for opening, closing, widening, and straightening any street, lane or alley." Section 806 of Article 4 of the Code of Public Local Laws while not prescribing the mode of procedure for the collection of benefits for opening and closing streets, authorized the City of Baltimore " to enact and pass all ordinances from time to time which shall be deemed necessary and proper " to effect such object. HELD:

That the City Collector had power to sell property assessed for benefits under Ordinance No. 84, to pay the assessment.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, MCSHERRY, BOYD and BRISCOE, J.

*William S. Bryan, Jr., City Solicitor,* (with whom was *Thomas G. Hayes, City Counsellor,* on the brief,) for the appellants.

*M. R. Walter,* for the appellee.

1. The alleged claim against the appellee did not accrue within three years prior to the filing of the bill of complaint, and all suits, actions or proceedings therefor are forever barred.

The claim for the assessment is a legal and personal one against the appellee, the right to distrain being merely cumulative. *Dashiell vs. Mayor and City Council of Baltimore,* 45 *Md.,* 621 ; *Appeal Tax Court of Baltimore City vs. Patterson,* 50 *Md.,* 376. And "the date of the contract under which the work is afterwards actually done" fixes "the personal liability for the tax." *Handy vs. Collins, Ex'r,* 60 *Md.,* 237.

Even had there been no demand and refusal, the alleged claim would still be barred. If the city had a claim it was payable on demand, and limitations began to run immediately upon the execution of the contract under which the work was done. *Fells Point Sav. Ins. vs. Weedon,* 18 *Md.,* 326 ; *Berry vs. Piersen,* 1 *Gill,* 248 ; *Ruff vs. Bull,* 7 *Harr. & J.,* 14.

The Statute of Limitations runs against municipal corporations. *Dillon on Mun. Corp., sec.* 669. Limitations apply as well in equity as at law. *Watkins vs. Harwood,* 2 *Gill & J.,* 310.

2. Ordinance No. 100 of 1886, under which the grading, paving and kerbing were done, was decreed by the Circuit Court of Baltimore City to be in contravention of the first section of the fourteenth amendment of the Constitution of the United States, and void. The grading, paving and kerbing of North avenue were therefore without any legal sanction, and no valid assessment for the cost thereof could consequently be made. *Mayor, &c., of Baltimore, et al. vs. Porter,* 18 *Md.,* 301; *Horn vs. Mayor, &c., of Baltimore,* 30 *Md.,* 222.

3. The assessments under Ordinance No. 100 of 1886 having been decreed by the said decree of 13th of March, 1893, to be null and void, the Act of 1892, ch. 284, and the Act of 1892, ch. 219, so far as the latter may be claimed to apply to the said assessments, are unconstitutional, null and void, being an exercise of judicial power in violation of the eighth and twenty-third articles of the Declaration of Rights. *Mayor, &c., of Baltimore vs. Horn,* 26 *Md.,* 206.

4. Ordinance No. 84 is void, because the ten days' notice prior to its passage required by the Act of Assembly of 1892, ch. 219, was not given. That Act was approved March 28, 1892, and was a repeal and re-enactment of chapter 218, sec. 2, of the Acts of 1874. It required a ten days' notice " before the passage, by either Branch of the Council, of any ordinance requiring the whole or any portion of the costs to be assessed upon the property," etc. It is a general law, and applies to every ordinance authorizing an assessment for grading, paving and kerbing a street.

Chapter 284 of the Acts of 1892 was approved 1st of April, 1892 (four days after the approval of chapter 219). There is nothing in this Act repealing the provision for notice in the general Act, ch. 219, and no intimation that the cases for which ch. 284 was intended should be exempted from the requirements of ch. 219. Under the set-

tled rule of construction it must, therefore, be held that the provisions of the general Act must apply.

But, furthermore, the two Acts are *in pari materia,* and should be construed together. Repeals by implication are disfavored by law, and are allowed only when the inconsistency and repugnancy are plain and unavoidable; "the general presumption being against an intention on the part of the Legislature to alter or modify the pre-existing law beyond the express terms or immediate scope of the statute relied on as having the effect of a repeal. If the subsequent Act can be made, by any reasonable construction or intendment, to stand with the previous legislation, that construction will always be adopted. This is a canon of construction which is as well established as any principle of the law." *Garitee vs. M. & C. C. of Balto., et al.,* 53 *Md.,* 435 ; *Canal Co. vs. Railroad Co.,* 4 *G. & J.,* 152; *County Comm'rs of Alleghany County vs. Union Mining Co.,* 61 *Md.,* 550, 551; *Mayor, &c., of Cumberland vs. Magruder,* 34 *Md.,* 386, 387 ; *Spielman vs. State,* 27 *Md.,* 525 ; *Wood vs. United States,* 16 *Pet.,* 342; *Cain vs. State,* 20 *Tex.,* 355 ; *Bowen vs. Lease,* 5 *Hill,* 225.

The cases of *Baltzell vs. Foos,* 1 *Harris & G.,* 506, and *Keller vs. State,* 11 *Md.,* 535, are specially in point.

The appellant contends, however, that the Act of 1892, ch. 219, is a new law and is intended to apply only to grading, paving and kerbing done after the passage of the Act. But there is nothing in it upon which to base any such contention. It is the old Act of 1874 repealed and re-enacted, and is the very law under which the grading, paving and kerbing was claimed to have been done, for which the assessment against the appellee was made. The repealing and enacting part of the Act of 1892 took effect at the same instant of time, and the enacting part substantially re-enacted the provisions of the first statute, and its operation continued uninterruptedly. *Dashiell vs.*

*Mayor, &c., of Baltimore*, 45 *Md.*, 616, 624 ; *Appeal Tax Court of Baltimore City vs. Patterson*, 50 *Md.*, 375.

The proviso of the Act of 1892, ch. 219, is: That ten days' notice shall be given " before the passage by either Branch of the Council of any ordinances requiring the whole or any portion of the cost to be assessed upon the property." No exception is made in any case.

5. Ordinance No. 84 limits the assessments to the property upon which no payments, under Ordinance No. 100, have been made, and the other property binding on North avenue, between Pennsylvania avenue and the western city limits, graded, paved and kerbed; and benefited thereby, is entirely excluded from further contribution to the cost of the work, irrespective of whether the amount heretofore paid is their full share of said cost or not, and the ordinance and the assessments thereunder are therefore null and void. It is radically erroneous, and violates the fundamental principle of equity, upon which only can taxation in any form be justified. *Matter of N. Y. Prot. Epis. Pub. School*, 75 *N. Y.*, 326 ; *Hassan vs. City of Rochester*, 67 *N. Y.*, 532 ; *Joyner vs. Third School Dist. in Egremont*, 3 *Cush.*, 572, 573.

6. No hearing is given by the Act of 1892, ch. 284, as to the aggregate sum to be collected. It is, therefore, in contravention of the 14th amendment of the Federal Constitution. *Ulman vs. Mayor, &c., of Baltimore, et al.*, 72 *Md.*, 595.

The only hearing given by that Act relates to the apportionment of the unpaid balance amongst those who had not paid the original assessment. The question of the original apportionment between those lands and the lands of those who had paid is not left open. That Act, therefore, deprived the owners, who had not paid the original assessments, of the opportunity of being heard upon the question whether the apportionment as between them and the

other land owners binding on North avenue was equitable and fair, and was, therefore, in violation of the 14th amendment. *Ulman vs. Mayor, &c., of Baltimore, et al.,* 72 *Md.,* 595; *Spencer vs. Merchant,* 125 *U. S.,* 357, 358, 359, 360.

For the same reasons, and upon the same authorities, Ordinance No. 84 of 1893, is in violation of Article 23 of the Declaration of Rights.

Our *Legislature* has not undertaken to make the assessments here, as was done by the *New York Legislature,* in *Spencer vs. Merchant,* and the decision of the majority of the Court in that case is not an authority against us. *Ulman vs. Mayor, &c., of Baltimore, et al.,* 72 *Md.,* 595.

7. Neither the Mayor and City Council of Baltimore nor the City Collector has power to distrain upon or to sell the property of the appellee for said assessment, as no such power is conferred upon them by chapters 219 and 284 of the Acts of 1892, or by any other Act of the General Assembly. Lands cannot be sold for such assessments without special legislation for that purpose. The ordinary authority to sell lands for taxes is not applicable to the case. *Merriam vs. Moody's Ex'rs,* 25 *Iowa,* 163 ; *Bergen vs. Clarkson,* 1 *Halsted,* 352; *Blackwell on Tax Titles,* 440; *Paine vs. Spratley,* 5 *Kans.,* 525; *Sharp vs. Speir,* 4 *Hill,* 76 ; *Guisebert vs. Etchison,* 51 *Md.,* 487 ; *Desty on Taxation,* 5; *McInerny vs. Reed,* 23 *Iowa,* 410.

" Tax sales are made exclusively under a statutory power. The power which the State confers to assess and levy taxes does not of itself include a power to sell lands in enforcing collection, but the power to sell must be expressly given." *Cooley on Taxation,* 470, 2*d Ed.*

" The power to levy and collect a tax, whether general or special, does not carry with it the authority to collect by distress or sale of property, or in any way more summary than by resort to legal proceedings. Municipal power to collect by distress and sale cannot be implied, because

the State collects its taxes in this manner. It must be given, if not in express terms, yet by the clearest and most indubitable implication. Therefore, the power to sell for the non-payment of taxes, general or special, cannot be inferred from an express provision in the charter to the effect that the collection of the taxes provided for therein shall be enforced *in such manner as may be provided by the ordinances of the city.*" *Dillon on Municipal Corporations, par.* 818, *4th Ed.*

This Court has already held in the Gould case, 59 Md., 378, that the word "taxes" under the head of "sale and redemption of property," in article 4 of Public Local Laws, does not include assessments.

The Mayor and City Council must enforce its lien against the property in the same way as any other corporation or individual would, viz., by filing a bill in equity for that purpose. *McInerny vs. Reed,* 23 *Iowa,* 412, 413, 414.

BOYD, J., delivered the opinion of the Court.

In the year 1887 the authorities of the city of Baltimore graded, paved and curbed North avenue, between Pennsylvania avenue and the western city limits. This was done under what was known as "Ordinance No. 100 of 1886," passed under the supposed authority of the Act of 1874, ch. 218.

In *Ulman vs. Mayor, &c., of Baltimore, et al.,* 72 *Md.,* 587, this Court decided that the assessment levied on Mrs. Ulman's property under that ordinance was null and void, as it "made no provision for notice to and hearing of any proprietor whose land adjoined North avenue, upon the question, what proportion of the tax should be assessed upon his land," and hence was taking property without due process of law. The majority of the Judges who sat were of the opinion that the case of *Spencer vs. Merchant,* 125 *U. S.,* 345, was applicable, and being a Federal

question, this Court was bound by it, and hence felt constrained to overrule a number of cases which had been decided by this Court.

The Legislature at its first session after the decision of the Ulman case passed two Acts, ch. 219 of the Laws of 1892, being amendatory of sec. 810 of Art. 4 of Public Local Laws (which was a codification of Act of 1874, ch. 218), and ch. 284 of the Laws of 1892, authorizing the Mayor and City Council of Baltimore to levy special assessments, and to provide for the collection thereof, upon property binding on any street, &c., which had been graded, &c., under any ordinance which provided for assessing the whole, or any portion of the costs of such work upon the property binding on such street, &c., and which assessments for any cause had not been fully collected.

The Mayor and City Council passed an ordinance known as "No. 84 of 1893," which, after referring in the preamble to the passage of Ordinance No. 100 of 1886, what was done under it, the decision of this Court declaring the assessment null and void, and to the passage of ch. 219 (claimed by the appellant to mean ch. 284) of the Act of 1892, in substance directed:

1. The City Commissioner to give ten days' notice, in two of the daily newspapers published in Baltimore, that at the time and place mentioned he would ascertain and determine the amount of tax to be assessed upon all the property binding on North avenue, between Pennsylvania avenue and the western city limits, upon which the assessment levied under Ordinance No. 100 had not been paid, for the special benefits which had been derived by said property for the grading, &c., of said portion of North avenue; that after hearing all persons interested, who desired to be heard, he shall proceed to apportion among the different pieces of property binding on said portion of North avenue, upon which the assessment levied under Ordinance No. 100 was not paid, the total cost of the

grading, &c., of said portion of North avenue, with interest thereon from the time the claim was paid by the city to the day he made such apportionment, less the amount paid by those who had paid under Ordinance No. 100, provided the tax assessed against any piece of property should not be more than the amount which the said property had been specially benefited by the grading, etc., of said portion of North avenue; that he might adjourn from time to time to give all parties an opportunity to be heard, and after the hearing he was required to make out a list of the property and the owners, together with the amount to be paid by each piece of property, and deliver a copy with an explanatory plat to the City Register, and then provided that such taxes should be liens.

2. That the City Register, within five days after the proceedings were left in his office, should notify all persons interested, by advertising once a week for two successive weeks in two of the daily newspapers in the city, that the said assessments and explanatory plats had been so placed in his office, and that the parties affected thereby were entitled to appeal to the Baltimore City Court.

3. That the City Commissioner should serve written or printed notices on each party so assessed or taxed, but that service of such notice should not be construed a prerequisite to the collection of the tax.

4. That any person dissatisfied with any assessment in which he was in any manner interested could appeal to the Baltimore City Court, where the proceedings should be similar to those in the case of trials of street appeals, and the same right should be had to appeal to the Court of Appeals.

5. That within ten days after the time limited for appeals, or after the decisions in case of appeal, the City Register should turn over the lists to the City Collector, who should proceed in all respects as he does in cases where persons or property are assessed for benefits for opening, closing, etc., any street, lane or alley.

The appellee filed a bill, giving a history of the several Acts of Assembly and ordinances, alleging that the City Collector was about to sell her property for the want of payment of the assessment alleged to have been made under Ordinance No. 84, and claiming that the Act of 1892, ch. 284, and Ordinance No. 84 were null and void.

The bill prays that said Act, Ordinance No. 84 and assessment under it be declared null and void; that all the proceedings in making said assessment be vacated and set aside; that the appellant and City Collector be enjoined. A number of objections to the Act of Assembly, ordinance and proceedings thereunder are stated in the bill which will be hereinafter passed upon.

The appellant filed its answer admitting for the most part the history of the proceedings as stated in the bill, but alleging that the Act of Assembly, ordinance and all proceedings under them were valid.

The case was submitted to the Court below (DENNIS, J.) on the bill and answer, and a decree *pro forma* was passed declaring Ordinance No. 84 and the assessment thereunder null and void, and perpetually enjoining the collection of the assessment.

From the *pro forma* decree an appeal was taken by the city.

Some of the objections urged by the appellee questioned the validity of ch. 284 of the Act of 1892 and Ordinance No. 84, whilst others only apply to the method of proceeding on the right to recover, if the statute and ordinance be valid.

As the former class of objections attack the very foundation of the assessment, we will consider them first, without attempting, however, to wholly distinguish the two classes on some points raised.

The first question that naturally suggests itself is, had the Legislature power to pass any statute to accomplish the purpose indicated in the preamble of this Act? The

case of *Spencer vs. Merchant, supra,* clearly establishes that it had. It is not necessary to discuss how far such a law could affect property that had been *bona fide* transferred from the owner of the property at the time the work was done to some one who had no notice that the property was liable to such a claim, as in this case the title remained in the person whose property is alleged to have been specially benefited.

We must therefore go a step further and inquire into the validity of this particular statute. In the opinion delivered on the motion for a rehearing in Ulman's case we expressly stated, on pages 610 and 611, that there was ample power in the original Act of 1874, ch. 218, to enable the city to pass ordinances that would not be subject to the constitutional objections passed on in that case. On page 593 it quoted from *Spencer vs. Merchant,* where it was said that "if the Legislature provides for notice to and hearing of each proprietor, *at some stage of the proceedings,* upon the question what proportion of the tax shall be assessed on his land, there is no taking of his property without due process of law." And on page 594, in further quoting from that case, it was said: "The statute of 1881 (being the one in controversy) afforded the owners notice and hearing of the question of the equitable apportionment among them, and thus enabled them to contest the constitutionality of the statute, *and that was all the notice and hearing to which they were entitled.*"

The Act of 1892, ch. 284, authorized the appellant "to provide by ordinance for the levy and collection in such manner as they may deem proper, of a tax upon all the property binding on any street, lane or alley, or part thereof, which may have been so improved, to the extent that such property shall have been specially benefited by such improvement; provided that no property upon which the assessment originally made for its share of the cost of such improvement shall have been paid, shall be

again assessed." The requirements of the Act are to take the total assessment formerly made for improvements, then deduct the amount paid, and assess the balance on the properties within the defined limits, to the extent that they have been respectively specially benefited by the improvement.

That was as certain as if the Legislature had named a definite sum to be assessed on those who had not paid, on North avenue or any other street where a similar condition of things existed. The objection of the appellee that no hearing is given by the statute as to the aggregate sum to be collected, was raised and distinctly answered in Spencer's case on page 558. The Act of 1892 further provides "that reasonable notice and an opportunity to be heard shall be given to all persons interested, before the final ascertainment of the amount of tax to be paid by any such property." It required appellant to provide for appeals to the Baltimore City Court from the decision of any commissioner, or other person appointed to determine the amount or amounts of such special taxes or assessments, and also for the right of appeal to this Court. The ordinance, as shown above, provided for ample notice. Ulman's case on page 611 authorizes notice by summons or through the newspapers.

Thus we see that the appellee had ample opportunity to have a jury pass upon the assessment against her property, as well as to have the Court below, and this Court on appeal, determine the legality of the proceedings, including the validity of the statute and ordinance. We are of the opinion that *Spencer vs. Merchant* and the former case between these parties, fully sustain the validity of the statute, and also of the ordinance unless there be some technical objection to the latter.

We will now pass upon the other class of objections urged by the appellee.

Without meaning to decide that the appellee could in

a bill for an injunction, properly ask the benefit of the statute of limitations, we have no doubt that it is not a bar to the assessment. It was only made a few months before the bill was filed, and no action accrued until the right to sue on it had matured.

It is contended by the appellee that inasmuch as Ordinance No. 100 was declared to be null and void, the grading, paving and curbing of North avenue were without any legal sanction and void, and that no valid assessment for the cost thereof could consequently be made. The case of *Spencer vs. Merchant,* so frequently cited by us, because we deem it conclusive on many of the points raised in this case, would seem to dispose of that objection. The case of *Mayor, &c., of Baltimore, et al. vs. Porter,* 18 *Md.,* 301, cited by appellee's counsel, certainly does not sustain his contention. There the city authorities undertook to correct the errors which the Court had determined had made the proceedings void, by passing an ordinance to confirm the grading and to ratify the acts of the City Commissioner. This Court on the page cited shows very clearly that that ordinance was not of binding force, because of its "not being authorized by any law." And in *Horn vs. Mayor and City Council of Baltimore,* 30 *Md.,* 222, which was a suit against the city for injuries done to his property in grading that avenue, the Court decided that the city was not liable, as the acts done were *ultra vires.*

In referring to the ordinance above mentioned, it said: "If the act was void, because *ultra vires,* and they had no power to authorize it before it was undertaken and commenced, they certainly had no power to adopt it after it was done."

Nor can we agree with the appellee's counsel that because Ordinance No. 100 was determined to be void, the Act of 1892, so far as applicable to the assessment, was unconstitutional, null and void, being an exercise of judicial powers in violation of the eighth and twenty-third Ar-

ticles of the Declaration of Rights. To sustain this he cites *Mayor, &c., of Baltimore vs. Horn, et al.*, 26 *Md.*, 206. After the decision in *Porter's* case, which also disposed of a similar case of *Horn et al.*, the Legislature undertook to authorize the city to collect the *same assessments* that this Court had determined could not be collected.

As was said in *Horn's* case, in referring to that Act of the Legislature, "it, in effect, and that most plainly, reversed the judgment of this Court." Of course that could not be permitted. But that was not what was done in this case. This Court, simply determined that the ordinance and assessment then in controversy were null and void, and in pursuance of the decision the Court below so decreed, and enjoined the appellant and its collector from collecting or in any way enforcing said assessment. The Act of 1892 provides for the collection of an assessment to be made to the extent that the property was specially benefited—not the original assessment but a new one, and not necessarily the same amount, for it might have been very different if the appellee had seen fit to appear before the commissioner or submit her case to a jury. As is said in *Mills vs. Charleton*, 29 *Wis.*, 400, "the original proceedings having failed for reasons which the Legislature may lawfully obviate, and the basis for taxation still remaining, namely, the public benefit for improvement received, for which the Legislature says the property of the citizens shall pay, a reassessment may be authorized." But on this point we might also have contented ourselves by referring to *Spencer vs. Merchant*.

Considerable stress has been laid on the point made by the learned counsel for the appellee that the ordinance is void by reason of the failure to give the ten days' notice required by the Act of 1892, ch. 219, to be given before the passage of an ordinance requiring the cost of grading, &c., streets to be assessed upon the property. He first

notes the fact that the ordinance itself refers to that chapter. It is true that in the preamble reciting the source of the authority of the city to pass the ordinance, it is stated, " Whereas, by chapter 219 of the Acts of 1892, full power and authority is given," etc., but the rest of the preamble itself shows conclusively that it was a mere clerical error, and that ch. 248 was intended. But if this were not so, a misrecital in an ordinance of the source of the power of the municipality could not affect its validity, if in point of fact the power to enact it existed. The real question raised by this point is whether or not ch. 219 is applicable to Ordinance No. 84 so as to require the notice therein provided for. Chapter 284 of Laws of 1892 was passed four days after chapter 219. It did not pretend, and was evidently not intended, to repeal ch. 219, which simply amended the local law of the city providing for the grading and improving of any street, alley or lane after it was opened. A careful examination of the two chapters convinces us that the notice required in ch. 219 is not and was not intended to be applicable to ordinances passed in pursuance of chapter 284. Chapter 219 gives the appellant power to provide by ordinance for improving streets as therein stated, and for assessing the cost of any such work, in whole or in part, upon the property binding upon such streets and for collecting the assessment, " provided that before the passage by either Branch of the Council of any ordinance requiring the whole or any portion of the costs to be assessed upon the property, ten days' notice shall be given," &c. It is perfectly apparent that this legislation only applied to ordinances for such grading or other authorized work as was to be *done after the passage of the Act*. The object of the notice was to give an opportunity "to all persons interested therein to appear and be heard before some appropriate committee of the Council " as to the grade, character of work, whether the cost should be

wholly, or in part only, borne by the property binding upon the street, whether the work should be done at all, etc. That Act provided for ordinances *for the work,* as well as for the assessment and collection of the costs thereof, whilst chap. 284 provides for the assessment and collection of the costs *for work already done* by the city. Hence the latter Act only required a notice before the final ascertainment of the amount of tax to be paid by any such property.

The position that the Act of 1892, chap. 284, and Ordinance No. 84, only applied to cases where valid assessments had been made is not supported by a reasonable construction of the Act. It does not use the term *"valid* assessments," and if it was intended to apply only to assessments that were *valid,* it would have been of but little, if any, use, as the Act would not be necessary to enforce *valid* assessments.

The question raised as to the interest charged need not be passed upon by us further than to say that, as we have held the statute and ordinance valid, a Court of equity could not give the complainant relief for any such alleged irregularities. She had the right to make such objections before the tribunal provided for under the ordinances, but not collaterally or by such a proceeding as this. The cases to that effect are very numerous in this State. We will only refer to *O'Neill, et al. vs. Virginia and Maryland Bridge Company,* 18 *Md.,* 1; *County Commissioners of Alleghany County, et al. vs. Union Mining Company,* 61 *Md.,* 548, and *Greenland vs. County Commissioners of Harford County,* 68 *Md.,* 59.

We have considered at some length the points raised by the bill that have been pressed by counsel, with the exception possibly of one or two, which are disposed of by what we have said above, or at least are met by the case of *Spencer vs. Merchant.*

There is still another question which was presented in

argument, although not given in the bill, as a reason for the interposition of a Court of equity. That is the right of the City Collector to sell the property of the appellee.

The Act of 1892 authorizes the city "to provide by ordinance for the levy and collection in such manner as they may deem proper of a tax upon all the property binding," etc.

The ordinance, after requiring the list to be placed in the hands of the City Collector, directs him to "thereupon proceed in all respects as he does in cases where persons or property are assessed for benefits for opening, closing, widening and straightening any street, lane or alley."

Section 806 of Article 4 of Public Local Laws is the statute law on the latter subject. It does not prescribe the mode of procedure for the collection of such benefits, but authorizes the appellant "to enact and pass all ordinances from time to time which shall be deemed necessary and proper to exercise the powers and effect the objects above specified."

From an examination of the ordinances of the city of Baltimore, we find that the appellant has full power to sell for benefits for opening, closing, widening and straightening any street, lane or alley. Hence the appellant has full and ample power to sell the property of the appellee for the assessment made under Ordinance No. 84.

It follows from what we have said we must reverse the *pro forma* decree, the injunction must be dissolved, and the bill dismissed.

> *Decree reversed, and the bill dismissed,*
> *with costs to the appellant.*

(Decided 21st June, 1894.)