# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed October 27, 1911.

OSCAR WOLFF AND EDWARD C. CARRINGTON, JR., RECEIVERS, AND ROSS S. MATHEWS

VS.

ALFRED M. QUICK, AND OTHERS, CONSTITUTING THE WATER BOARD OF THE CITY OF BALTIMORE.

*Wm. Ewin Bonn* and *Chester F. Morrow* for petitioners.

*Benjamin H. McKindless* for respondents.

BOND, J.—

The petition for the issuance of the writ of mandamus alleges that the petitioners, Wolff and Carrington, were duly appointed receivers of the leasehold and fee-simple *brewery property* of the Mt. Vernon Brewing Company, in a proceeding to foreclose a mortgage deed of trust of that company; that under proper authority they sold the property to Ross S. Mathews on the 31st day of December, 1910, and delivered him a duly executed deed upon final ratification of the sale.

It alleges further that certain water rents due to the city, to the total sum of $428.50, were later discovered by the petitioners to have been left unpaid by the Mt. Vernon Brewing Company, prior to the receivership, and that the city officers had, in consequence, turned off the water supply from the property and now refuse to turn it on at the demand of the present petitioners. The petition thereupon prays that the writ of mandamus issue to compel the water board to turn on the supply.

The respondents answer that under the laws and ordinances concerning the supply of water to users in Baltimore City, the rent or charge for water is made a lien upon property supplied, and it is the duty of the city officers so to cut off the supply to this property in the hands of any owner. A replication to this answer denies that under the laws and ordinances referred to, there is any such lien charge or any such duty to cut off the water supply until the arrears are paid.

The replication is now demurred to.

This replication, itself, is substantially a demurrer to the answer, but that does not seem to be a material defect in the pleadings.

In the argument counsel for the respective parties make these contentions:

The petitioners urge that they must be treated as new or original owners of the brewery property, entirely disassociated from the previous owner, the Mt. Vernon Brewing Company, and its debts, and that their application for water supply must be considered without any reference to the failure of the Mt. Vernon Company to pay its water rents, and the consequent shutting off of the supply. This old debt, it is contended, with its penalty, is not of such a nature that, under general principles of law, it will be carried over and attach to a new owner, and no statutory provisions of law have given it this effect. And, generally, it is urged that the new owner cannot be so deprived of water supply pending the payment of the unpaid rents of the previous owner.

The respondents refer to various provisions of the city charter, and to various city ordinances, and argue that water rent is in effect a lien charge upon the property on which water is used, inasmuch as the city officers are authorized and empowered to sell the property to recover rents in arrears, and that such a lien must follow the property into the hands of a new owner, and justify the refusal to supply until the payment of the arrears.

The power to sell, upon which this argument is based, is deduced from provisions in the charter and ordinances which provide, generally, that arrears in water rents shall be collected by the same process as that by which taxes are collected.

The petitioners deny that such a power to sell is to be found in these statutory provisions, or inferred from them; and argue that, however that may be, the supply to this particular property was by special contract under a provision of the charter, to which the provision for collection by the same process as that used for collection of taxes has no application.

In the first place, I do not see that the receivers, who had parted with the brewery property previous to filing this petition, and are, so to speak, not on the premises to receive a supply of water, can be heard to demand that the property be now supplied.

They clearly have no standing in court to demand that the supply be given to Mathews, their vendee. This improper joinder of the receivers as petitioners, is, I think, an objection which may be considered on the demurrer; and I find the demurrer should be sustained as far as the replication of the receivers is concerned. The petitioner, Ross S. Mathews, is the proper applicant.

The argument of counsel on both sides of the case was directed mainly to the proposition that the rent or charge for water supply is enforceable or secured by a lien attaching to the property supplied, it being assumed, apparently, that if there is such a lien the charge is against the property, in rem, rather than against the owner individually.

In this particular instance the accrued charges were in accordance with uniform rates prescribed by ordinance for all users of a wide grade or class who might apply, under Section 6, sub-section 30M of the city charter, and not by special contract such as the city is empowered to make under sub-section 30B of the same section.

I find myself unable to agree with the conclusion of counsel for the petitioners that the Court of Appeals in the case of Williams vs. Kemp, 67 Md. 350, has characterized such a supply, as is sought for here, as being essentially a special contract supply, under this Subsection 30B of Section 6 of the charter (Act 1882, Ch. 225), and as one to which the general provisions of the charter and ordinances regarding collections are not applicable.

That case decides that the cost of water used in running a hydraulic elevator in a leased hotel is not an item which the landlord would by implication be bound to pay or allow to the tenant. The court does not say that water for such an extraordinary use can only be furnished by special contract. There may, doubtless, be a special contract to cover such a supply, but it is doubtful if the city could be compelled to make such a special contract ("on such terms and for such time as it may deem proper and expedient") in any particular instance.

The water supply for breweries, and that sought for here, however, has, as said before, been brought within a comprehensive system of supply to the public generally, upon fixed rates for amounts actually used, and the rates for such a supply, I think, come within the general provision referred to regarding collections.

This charge, with or without the security of a lien attached to it, is primarily only a charge to the user of water personally, as for goods or commodities sold and furnished. Whether the water is furnished by the municipality, as here, or by private individuals or companies, as it is in many other parts of the country, the nature of the charge is exactly the same.

It is not based upon values of the property supplied, as a tax; it is according to the amount of water actually used; and it may be recovered by suit at law against the user. (Sub-Sec. 30M.) The mere fact that the water is furnished by the municipality does not of itself attach any greater remedies or better methods of enforcements than would ordinarily attach to a debt for water furnished by a private company.

In the view of the authorities the charge is analogous to charges for gas, telephone and electric light service, for arrears in which the service is commonly discontinued.

"The water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity, just as similar rates are payable to gas companies, or to private water works, for their supply of gas or water. No one can be compelled to take water unless he chooses, and the lien, although enforced in the same way as a lien for taxes, is really a lien for an indebtedness, like that enforced on mechanics' contracts, or against ships and vessels."

Jones vs. Water Commissioners, 34 Mich. 273, 275.

1 Cooley on Taxation (3 Ed.) 5.

Provident Institution vs. Jersey City, 113 U. S. 506.

Chicago vs. N. W. Mutual Ins. Co., 218 Ill. 40, 43.

Turner vs. Revere Water Co., 171 Mass. 329.

No charge or assessment by a public body—not even taxes, indeed—can be enforced by a sale of the land taxed. in the absence of a legislative provision authorizing it. In Baltimore City there was no lien on land for taxes prior to the Act of 1840, Chapter 63.

4 Dillon on Municipal Corporations (5 Ed.), Sec. 1420.

Meriwether vs. Garrett, 102 U. S. 472, 514.

Dallam vs. Oliver, 3 Gill 445.

Of course, the legislature may give a lien upon land supplied, even to a water company or gas company; and it may provide for the withholding of all supply until arrears are paid, notwithstanding the original debtor parts with his interest in the property.

Turner vs. Revere Water Co., 171 Mass. 329.

Provident Inst. vs. Jersey City, 113 U. S. 506.

Atlanta vs. Burton, 90 Ga. 486.

Girard Ins. Co. vs. Philadelphia, 88 Penn. St. 393.

And it seems clear that such a lien may be provided by ordinance. if authority to pass the ordinances is found in the charter or statutes.

2 Cooley on Taxation, 3rd Ed., 865.

Most of the authorities declare that to give a lien there must be an express statutory provision.

Authorities, supra.

1 Cooley on Taxation, 3rd Ed., 470.

Blackwell on Tax Titles, 2nd Ed., Sec. 152.

But whether a statutory provision is or is not express is, after all, largely a matter of construction. The statutory provisions in the city charter, and the ordinances, contain no direct statement of the legal effect of the charge for water supplied, and the failure to pay it in any one instance. On the contrary, that is left a matter of somewhat difficult inference from combination or comparison of separate provisions. Those with which this case is chiefly concerned are the following:

The city charter in Section 6, Subsection 30A, empowers the city to operate, maintain and control a system of water supply for Baltimore City, "and to pass all ordinances necessary in the premises;" and in the same Subsection the city is invested with all the rights and powers necessary for the introduction of water into the city and "to enact and pass all ordinances from time to time, which shall be deemed necessary and proper to exercise the powers and effect the objects above specified."

In Sub-section 30M it is provided that:

"The said city is authorized and empowered to assess rates for the supply and use of water at any point in Baltimore City or County, and also to enforce payment for the use of water and other expenses incurred in the introduction of water from the water mains, according to the rates established by the said city, said payments to be enforced by the same process that City or State taxes are collected, or that may be collected by process before a justice of the peace, or in any of the courts of the City of Baltimore having jurisdiction in such cases."

In the City Code (1906 Ed.), Art. 40, Sec. 5, after providing for the water rates and discount on bills, it is provided that:

"All bills not paid on or before the first day of October, shall be placed in the hands of collectors, and shall then be collected in the same manner and subject to the same costs as the city collector is or may be authorized to demand in collecting taxes overdue, or they may be collected as other debts

are collected, before a justice of the peace."

It seems to me these provisions must be taken to empower the city to sell the property supplied for unpaid water rates, inasmuch as that is the process, outside of suit in personam, "as other debts are collected," to which the city collector resorts under the laws for the collection of unpaid taxes. And this conclusion appears to be in accordance with a decision of the Court of Appeals in Baltimore vs. Ulman, 79 Md. 469, 486, in which closely similar provisions regarding the collection of a paving tax were held to give power to sell property.

In Baltimore vs. Ulman, the court had before it an act of legislature authorizing the city "to provide by ordinance for the levy and collection in such manner as they may deem proper, of a tax upon all the property" binding on the street paved, etc. A municipal ordinance then provided that the city collector, after receiving a list of debtors for the paving tax, should "thereupon proceed in all respects as he does in cases where persons or property are assessed for benefits for opening, closing * * * any street, lane or alley."

Following this clue, Section 806 of the charter then in force, while prescribing no specific mode of procedure for the collection of such benefits, authorized the city "to enact and pass all ordinances from time to time which shall be deemed necessary and proper to exercise the powers and effect the objects above specified."

And, continuing further, the court found in the city ordinances full powers given to sell for benefits for opening, etc., any street, lane or alley. "Hence," the court concluded, "the appellant had full and ample power to sell the property of the appellee for the assessment made under Ordinance 84."

Given, then, the power to sell the property supplied to recover payment of water rates in arrear, this, of course, creates a lien on that property, which will attach even in the hands of subsequent owners.

Eschbach vs. Pitts, 6 Md., 71.

In coming to this conclusion I have not overlooked the fact that sub-section 30M of Section 6 of the Charter, which provides that payment of

rates assessed by the City may be "enforced by the same process that City or State taxes are collected," expressly provides that those rates might be assessed "for the supply and use of water at any point in Baltimore City or County."

And this inclusion of rates for supply to county property has seemed to furnish an argument against the conclusion that the city was intended by the charter to have power to sell the property supplied, for arrears in water rents.

But the conclusion above, that the process for the collection of taxes does include the power to sell property, has, nevertheless, seemed unavoidable; and without passing on any question as to a lien on county property supplied, the lien on city property, such as that concerned in the present case, seems sufficiently clear.

And so of the further argument, that neither the charter nor the city ordinances have undertaken to provide specifically for the proceedings for selling property to pay arrears in water rents.

If this is taken as an indication that no power to make such a sale was intended to be given, I think it must give way before the express provisions that the same process as that used in the collection of taxes shall be available for collection of water rents. Moreover, it is by no means certain that proceedings for sale for the latter purpose, are not expressly provided for in Sec. 43 of the city charter, which covers all cases, "Whenever it shall become necessary to sell any part or parcel of ground in the City of Baltimore, improved or unimproved, for the payment of any taxes or assessment, of any nature or kind whatever, levied or charged." It is unnecessary to decide here whether that section does include within its operation charges for water supply by meter service.

But, with the lien thus established, still, the petition in this case does not directly seek to have the property relieved of a lien, it seeks to compel a resumption of the supply of water despite the unpaid rentals which caused the city to shut it off.

Section 9 of Article 40 of the City Code (1906 ed.), provides:

"All bills in arrears may be deemed a sufficient reason for stopping the water until all arrears are paid."

There were many cases referred to in the argument, holding that such an authority to shut off the supply in any instance until arrears are paid, does not justify continuing to withhold the supply in case of a change of ownership of the property, and when application for a supply is made by an entirely new owner who has, himself, not incurred the indebtedness. Perhaps the leading cases on this point are Turner vs. Revere Water Co., 171 Mass., 329, and Chicago vs. N. W. Mutual Ins. Co., 218 Ill., 40. These cases argue that the new owner is entitled to receive a supply of water upon paying the price of what he uses, just as any other citizen or property-holder, unless there is some indebtedness or undertaking, or some default on his part which might differentiate him from the public generally, in this respect. And the indebtedness of the previous owner is regarded as foreign to him, and not so differentiating him; and it is considered unreasonable to require him to pay it as a condition to receiving water.

At the same time those decisions make note of the fact that in the cases under discussion the property in the hands of the new owner was not subject to a lien for the old debt, with the implication that the existence of a lien might justify a condition that the lienee should discharge it in order to receive his water supply. And such a conclusion would, I think, be correct.

The debt and default in payment are now made, indirectly, those of the new owner, and by that fact he is differentiated from the members of the public generally, entitled to water service. He can easily protect himself against it in the purchase of the property; and so, without any hardship upon the new owner, the city is afforded a simple method of enforcing the security of its lien. The court cannot avoid the general knowledge that the state of the charges for water supplied to any property in the city is readily ascertainable by a prospective purchaser, and further, that it is the common established practice for a purchaser of property in Baltimore city to require any arrears in water rents to be paid to the date of transfer, or to be deducted from the purchase price.

For these reasons, it seems it must be held that the respondents were, as set out in the answer, and upon the facts set out there and in the previous pleadings, justified as matter of law in withholding the supply of water from the petitioner, Mathews, and the replication denying such legal conclusion, and asserting the right of Mathews to a supply of water, notwithstanding, is demurrable, and the demurrer will, therefore, be sustained.