# CHARLESTON.

CITY OF ELKINS v. SEYMOUR HARPER *et als.*

Submitted April 23, 1918.    Decided April 30, 1918.

1. . STATUTES—*Local or Special Laws—Constitutional Provisions.*   ..

The inhibition of the passage of local or special laws for "laying out, opening, altering and working roads or highways," and for "vacating roads, town plats, streets, alleys and public grounds," contained in sec. 39, Art. VI of the Constitution, does not withhold from the legislature power to pass a law conferring upon a municipal corporation of two thousand population or more, special or local authority and power to maintain and improve its roads, streets, alleys and public grounds, by means and methods different from those provided for roads generally.  (p. 380).

2. SAME—*Special or Local Statute—Validating Act.*

A provision in a special charter granted to such a city by a legislative act, empowering it to reassess and charge real estate therein with the costs of street paving previously done and subsequently to be done, when the original assessments have been, or shall be, invalid on account of irregularities in procedure, does not conflict with said limitation and is not void by reason thereof. (p. 380).

3. MUNICIPAL CORPORATIONS--*Public Improvements—Invalid Assessments—Curative Act.*

In case of invalidity of a public improvement special assessment made by a municipal corporation, against real estate, which it was within the power of the legislature to authorize, by reason of irregularities in the procedure under which the improvement and assessments were made, there is a moral obligation and an equitable right against the property enhanced in value by the improvement, which the leglislature may constitutionally enforce by the passage of an act providing for reassessment of the costs of the improvement against such property.  (p. 380).

4. SAME.                                                      ..

An adjudication of the invalidity of the original assessment in such case, between the dates of the making thereof and the passage of the reassessment act, does not preclude power and au-

thority in the legislature to pass it, nor its operation and effect upon the person and property absolved from liability by the adjudication. Nor can such adjudication be successfully set up by a plea or otherwise, against a bill to enforce the lien of the reassessment made under the curative act. (p. 381).

5.   SAME—*Invalid Assessment—Reassessment Act—Limitations.*

The bar of the statute of limitations to an action or other procedure based on such original assessment, intervening before the passage of the reassessment act, vests no right in the person against whom it was made, or his assigns, respecting the property assessed, as against the state or its governmental agencies, since the act neither revives nor continues any legal obligation or lien and the authorization of the reassessment is the exercise of the state's taxing power, not the mere assertion, revival or creation of a right of action. (p. 382).

6.   SAME—*Invalid Assessments—Curative Act—Rights of Purchaser.*

The state's power of taxation is not subject to the limitation in the law of conveyancing in favor of *bona fide* purchasers, wherefore one who purchases real estate against which an invalid, but curable, special assessment has been made, between the date of an adjudication of its invalidity and that of the passage of an act authorizing reassessment of the property, takes it subject to liability to reassessment. (p. 382).

7.   SAME—*Reassessment Act—Notice of Reassessment—Resolution.*

Publication of a resolution of the city council, reciting the reassessment act, ennumerating the invalid assessments, fixing a time and place for the hearing of all matters pertaining to the reassessment of the costs of the pavement of the streets mentioned in it and directing publication of such hearing, is a suffi-. cient compliance with the provision of sec. 28, ch. 12, Acts of 1915, respecting notice of reassessment. (p. 382).

8.   SAME—*Invalid Assessment—Reassessment—Publication of Notice.*

An insufficient date of such publication, shown in one of the certificates thereof is not good ground of demurrer to a bill to enforce the lien of the assessment, containing an allegation of due publication, since a proper date may be proved otherwise than by the certificate. (p. 382).

9.   SAME—*Public Improvement—Reassessment—Publication by Council—Validity.*

The use of a civil engineer's report showing the amounts of unpaid assessments, the frontages of the properties and the names of the owners, in the making of a reassessment, does not invalidate the action of the council. (p. 382).

10. SAME—*Invalid Assessment—Reassessment—Discrepancies.*

> Discrepancies in front foot rates of assessment, discoverable by calculation, are not good ground of demurrer to a bill to enforce the lien of a reassessment, if constituting ground of avoidance, since they may be due to payments made on the original assessments. (p. 383).

Case certified from Circuit Court, Randolph County.

Bill by the City of Elkins against Seymour Harper and others. Demurrer to bill overruled, and decision of circuit court certified for review.

*Affirmed, and cause remanded.*

*S. T. Spears,* for plaintiff.

*James A. Bent, D. H. Hill Arnold,* and *W. B. Maxwell,* for defendants.

POFFENBARGER, PRESIDENT:

Having overruled a demurrer to a bill for enforcement of a lien claimed for the cost of street paving, under a reassessment made in pursuance of provisions of sec. 28 of ch. 12 of the Acts of 1915, constituting the amended charter of the city of Elkins, and rejected a plea of *res adjudicata* thereto, the judge of the Circuit Court of Randolph County has certified his decision to this court for review.

Certain special assessments made by the city of Elkins in the year 1904, for street paving done in the previous year, were invalid for reasons assigned in the opinion delivered in *Whetsell* v. *City of Elkins,* 68 W. Va. 709. Among the properties specially benefited by the improvement and then invalidly assessed was a lot owned by Seymour Harper, all of which he has since conveyed to other parties in separate parcels and by separate conveyances. He as well as the present owners of the parts conveyed and the holders of liens on one or more of them are made parties defendant to the bill.

Unconstitutionality of the reassessment provision of the statute is urged upon several grounds and the validity of the assessment itself is attacked for alleged irregularity in procedure, in view of the possibility of an adverse holding as to the other grounds assigned.

The inhibition of the passage of local or special laws for "laying out, opening, altering and working roads or highways," and "vacating roads, town plats, streets, alleys and public grounds," found in sec. 39, Art. VI of the Constitution, must be read and considered in connection with another provision of the same section, impliedly authorizing the granting of special charters to cities, towns and villages having populations of two thousand or more. Such charters invariably confer special powers of street improvement. If they did not and streets stood on the footing of country roads as to alteration and "working," in the sense of mere improvement, one of the principal purposes of incorporation would be impossible. The implied authorization of special charters necessarily restricts the operation of the limitation relied upon, to roads and highways outside of incorporated cities, towns and villages, in so far as it pertains to maintenance and improvement thereof and methods of providing means therefor. *Matter of Lexington Avenue*, 29 Hun. (N. Y.) 304, affirmed without an opinion, 92 N. Y. 629; *Matter of Application of Woolsey*, 95 N. Y., 135. As to establishment, opening, vacation and changes of location, it may be otherwise, but, whether it is or not, there is no occasion now to inquire.

The legislature had undoubted power to provide, in ch. 47 of the Code, under which the paving was done, for such an improvement as was made and special assessments for payment of the costs thereof, without the filing of a petition therefor by the abutting property owners. The raising of funds for such purposes is an exercise of the state's taxing power, whether asserted and applied directly or through local taxing tribunals, by delegation. *New York C. & St. L. Ry. Co.* v. *City of Hammond*, 83 N. E. 244; Page and Jones, Tax. by Assessment, sec. 8, citing numerous authorities. The reassessment act is a curative statute, providing the means of enforcing an economic and moral obligation which it could have imposed and intended to impose, but which failed as a legal obligation by reason of mere irregularities in procedure. Such statutes are everywhere held to be within the legislative power unless the constitution forbids retroactive or retro-

spective legislation. *Spencer* v. *Merchant*, 125 U. S. 345; *Lombard* v. *Park Commissioners*, 181 U. S. 33; *Newman* v. *City of Emporia*, 41 Kan. 583; *Baltimore* v. *Ulman*, 79 Md. 469; *Byram* v. *Detroit*, 50 Mich. 56; *Carpenter* v. *St. Paul*, 23 Minn. 232; *Lord* v. *Bayonne*, 65 N. J. L. 127; *Fountain* v. *Newark*, 57 N. J. Eq., 76; *Wilson's Appeal*, 152 Pa. St. 136; *Hanber* v. *Milwaukee*, 124 Wis. 153. Our constitution forbids enactment of *ex post facto* laws, but not merely retroactive laws. *Ex parte Quarrier*, 4 W. Va. 210, 224; *Morris* v. *Wyatt*, 2 W. Va. 575; *Ex parte Hunter*, 2 W. Va. 122, 155; *Calder* v. *Bull*, 3 Dall. U. S. 390; *Cummings* v. *Morris*, 4 Wall. (U. S.) 277.

The reassessment act did not validate the assessments made in 1904, nor purport to do so. On the contrary, it assumed invalidity of some assessments made, for non-compliance with regulatory provisions, and authorized reassessment in such cases, on a prescribed basis which the legislature could have originally adopted. The city had no power to remedy its defective assessments and they were void, but there was a moral obligation resting upon the property owners benefited by the improvement of their properties, and an equitable right against the property itself, which the legislature had constitutional power to legalize and enforce. Authorities already cited cover and foreclose the contention of lack of legislative authority, based upon this theory. The legislature may raise money by taxation to discharge such obligations and, therefore, to reimburse the state as to money paid on account thereof. *Woodall* v. *Darst*, 71 W. Va. 350; *Town of Gilford* v. *Darst*, 13 N. Y. 143; *Cole* v. *State*, 102 N. Y. 48. And, on the same principle, it may provide for moral obligations of a city or for its reimbursement. *Doyle* v. *Newark*, 34 N. J. L. 236.

The adjudication of invalidity of the former assessment does not preclude a reassessment under new legislative authority. That decision stands only upon the law and facts then obtaining. Power in the legislature to alter the law underlying that assessment and adjudication completely annihilates the contention of vested right by adjudication. *Doyle* v. *Newark*, 34 N. J. L. 236. The assessment was void

without adjudication, only because the delegated authority to tax had not been strictly pursued. Limitations imposed which the legislature could have omitted had been disregarded. As the legislature could subsequently forego disregard of the limitations it was not bound to impose, the moral obligation could be enforced by a new act, and the adjudication became immaterial. Dillon, Mun. Corp. 5th Ed. sec. 1496.

The attempt to make out a case of vested right under the statute of limitations proceeds upon a manifestly incorrect theory and assumption respecting the nature and origin of the reassessment act and the lien asserted under the reassessment made. There is no time limitation upon the state's power of taxation in any statute or the constitution. This assessment arises out of the exercise of that power. It does not stand upon a legal obligation or lien brought into existence by the work done in 1903 or the assessment made in 1904. The legislative power to impose a tax in 1915 for discharge of a moral obligation incurred in 1903 and 1904 was not a right of action falling under the operation of the statute of limitations. The ostensible tax and lien of 1904 had no legal virtue or validity at all. They conferred no right of action. In them, there was nothing against which statutory time could run.

The alienation of the property between the dates of the adjudication of invalidity and the reassessment constitutes no obstacle to the operation of the reassessment act. Purchasers must take notice of the state's powers over the property they buy. Individuals can obtain no rights against its known right of taxation or regulation. *Benwood* v. *Pub. Serv. Com.*, 75 W. Va. 127. The principle has been judicially applied to cases of this kind. *City of Seattle* v. *Kelleher*, 195 U. S. 351; *Tallman* v. *Janesville*, 17 Wis. 51; *Cross* v. *Milwaukee*, 19 Wis. 509.

A further ground of demurrer is alleged defectiveness of the notice of the reassessment. The city council passed a resolution reciting the reassessment act, vacating the old assessment, fixing a day and place, "for a hearing upon all matters pertaining to" such reassessment as the act authorizes, "of the costs of said pavement against said respective

properties," the pavement and properties having been mentioned, and directing the city clerk to give notice of the time and place of hearing, by publication agreeably to the requirements of the act. The clerk, by way of execution of this order, caused the resolution to be published in full. Though somewhat informal, the notice was clearly sufficient to apprise all interested persons of the intention and purpose of the council to make the reassessment authorized by the statute, and nothing more was necessary. An obvious clerical error as to the date of publication of the notice, in the certificate thereof, is relied upon, but the bill alleges due publication and the date is a matter of proof. The certificate was not a recordable paper, requiring recordation within a certain time to be effective, and, therefore, incapable of amendment. Hence, a different date generally alleged can be proved.

The amounts of the unpaid assessments, the frontages of the properties and the names of the owners were set forth in a report of a civil engineer, used for the purposes of the reassessment, and this fact is relied upon as a ground of impeachment. The reassessment is the act of the council, after notice, however it may have ascertained the data therefor. Though the report of the engineer was used, its own records no doubt furnished information verifying the correctness of the report.

Discrepancies in the assessments per front foot are revealed, but these may be due to payments made on the old assessments. They are clearly not sufficient of themselves to invalidate the assessments, as matter of law, upon a demurrer to the bill, whatever their effect may be upon the final hearing.

The plea of former adjudication, based upon the unsuccessful effort to enforce the original assessment is insufficient for reasons already stated.

The decree overruling the demurrer to the bill and rejecting the special plea will be affirmed and the cause remanded.

*Affirmed, and cause remanded.*

63).