# CHARLESTON.

FAIRMONT WALL PLASTER CO. v. ERNEST C. NUZUM *et als.*

Submitted February 17, 1920.   Decided March 2, 1920.

1. MUNICIPAL CORPORATIONS—*Special Paving Assessment Against City Lot Not Complying With Charter Then in Force Invalid.*

   A special assessment against a city lot for cost of paving, made agreeably to the provisions of a repealed charter and substantially variant from the requirements of a new or amended charter in force at the time of the improvement and assessment, is fatally defective and unenforceable.   (p. 669).

2. STATUTES—*Unconstitutionality of Separable Provisions of Municipal Charter Statute Do Not Wholly Invalidate it, or Deny Effect to Clause Repealing Former Charter.*

   Unconstitutionality, if any, of clearly separable provisions of a municipal charter statute, do not wholly invalidate it, nor deny effect to a clause thereof repealing the former charter.   (p. 669).

3. MUNICIPAL CORPORATIONS—*New or Amended Charter Statute, in so Far as Constitutional, is Law of Municipality, Though Judicial Proceedings Are Pending to Test its Constitutionality.*

   Such new or amended charter, in so far as it is constitutional and valid, is the law of the corporation, notwithstanding the pendency of judicial proceedings to prevent it from going into effect, on the ground of unconstitutionality.   (p. 669).

4  CONSTITUTIONAL LAW—*Neither Courts Nor Officers Can Prolong Life of Repealed Statute.*

   Neither the courts nor individuals acting as officers can prolong the life of a repealed statute.   (p. 669).

5. OFFICERS—*Statutes—Acts of De Facto Officers Valid; There Cannot be a De Facto Law in Territory of Undisputed Sovereignty.*

Though there may be de facto officers whose acts are valid, there can be no such thing as a de facto law, in territory under the jurisdiction of an undisputed sovereignty. (p. 630).

6. SAME—*Acts of De Facto Officers to be Valid Must Comply With Applicable Law.*

To be valid, the acts of de facto officers must comply with the requirements of applicable law, to the same extent and in the same manner as valid acts of de jure officers. (p. 630).

Appeal from Circuit Court, Marion County.

Bill by the Fairmont Wall Plaster Company against Ernest C. Nuzum and others. Bill and and amended bill dismissed on demurrer, and defendant Ernest C. Nuzum appeals.

*Affirmed.*

*Harry Shaw,* for appellant.
*Trevy Nutter* and *W. S. Meredith,* for appellee.

POFFENBARGER, JUDGE:

The bill and amended bill dismissed on demurrer by the decree complained of, sought enforcement of an alleged lien for street paving, on a certain lot in the City of Fairmont. The court below held the assessment void because, on its face, it appears to have been made under a paving provision of a charter that, in the opinion of the court below, had been repealed before the paving was ordered or done and before the assessment was made. The controversy is a result of the Fairmont Charter Act of 1915, referred to in *Anderson* v. *Bowen,* 78 W. Va. 559.

Notwithstanding the adjudication of the validity of the passage of the Charter Act of 1915, made in that case, June 1, 1916, the authorities of that city in office at the time, on August 7, 1916, ordered the paving of a certain street therein, East Park Avenue between Morgantown Avenue and Speedway Street, under the provisions of the Charter Act of 1913, which the act of 1915 purported to repeal, and, between that date and January 22, 1917, caused the work to be done and paving certificates therefor to be issued, in accordance with the provisions

of said act of 1913. The ordinance ordering the paving and the certificates based on the assessment recite the paving provision of the act last above mentioned. The assessments made on all of the properties affected amounted to over $7,000.00, but those made against the property involved here aggregate only $124.20. The work was let to contract and the contractor partly paid in assessment certificates and he assigned those purporting to bind the property of the appellee, to the appellant in this cause.

A demurrer to the bill disclosing these facts having been sustained, the bill was amended by allegations of the award of an injunction by the United States District Court for the Northern District of West Virginia, restraining the Board of Affairs of the City from holding an election under the act of 1915, dissolution of the injunction and pendency of an appeal from the decree of dissolution, in the Supreme Court of the United States. A demurrer interposed to the bill so amended was sustained and both bills dismissed.

Such grounds of invalidity of the act of 1915 as would have wholly defeated it, if they had been tenable, were distinctly disposed of adversely to the assailants of the act, in the decision above referred to, and that decision was rendered before the work in question was ordered or performed, as has been shown. That decision also impliedly held that the constitutional infirmity, if any, in the provisions of the Charter Act of 1915, respecting the mode of election of officers and qualifications of voters, did not wholly invalidate the charter. That they did not is clearly manifest. There was no constitutional impediment to a change of the name of the governing body from "Board of Affairs" to "Board of Directors", nor to a change in the number of its members. Whether all of the provisions were valid or not, the act continued or created a municipal corporation having numerous and extensive powers of the kind usually conferred upon such corporations, including that of street improvement and imposition of special assessments for part payment of the cost thereof, about the validity of which no question ever arose. Efforts wholly to defeat and annul municipal charters on the ground of invalidity of clearly separable provisions thereof are never sustained by the courts. Authority of

the legislature to make the slight changes in the paving sections of the Charter .Act of 1913, found in that of 1915, was never questioned and could not have been with any degree of plausibility. They amounted to no more than the reduction of the assessments from entire cost of the work to two-thirds thereof, and requirement of publication of notices of assessments in all of the daily papers of the city instead of such publication in two of them. Of the constitutionality of all of the basic provisions of the Charter Act of 1915, other than one or two relating to the mode of election and the qualifications of voters, which are obviously separable and displaced by general laws, if invalid, and the validity of the repealing clause and the paving and assessment provisions, there is not the slightest doubt in our minds. To invalidate the repealing clause, substantially all, if not all, of the act would have to be unconstitutional. Lewis Suth. Stat. Con., Sec. 245; *Ely v. Thompson,* 3 A. K. Marsh (K. Y.) 70; *State* v. *Bland,* 121 Ind. 514; *Randolph* v. *Builders etc. Co.,* 106 Ala. 501; *State* v. *Thomas,* 138 Mo. 95; *McAllister* v. *Hamlin,* 83 Cal. 361. In the main, this act is valid.

Nor has there ever been any final adjudication to the contrary, if such an adjudication would affect the question now under consideration. The decree in *Anderson* v. *Bowen* predicated upon that theory was reversed by this Court, and the order of the federal court awarding an injunction against the holding of an election was merely interlocutory. It simply restrained action of the city authorities, pending determination of the question, and was later set aside. The appeal from the order of dissolution accomplished no more than a provisional reinstatement of the injunction, for the purpose of inquiry by the appellate court, as to the validity of the act.

Non-conformity, in substantial respects, with the only law in force in the City of Fairmont, at the dates of the paving and assessment, namely, a charge of the entire cost of the work instead of two-thirds thereof, and publication of the notice of the assessments in two papers instead of all of the daily papers, renders the assessment and certificates here involved necessarily void, unless the Charter Act of 1913 was kept in force by means of the litigation to which reference has been made, as a de

facto law, or the assessment has been validated by the Charter
Act of 1919.

There may have been de facto officers, at the date of the
paving and assessment, but there could have been no such thing
as a de facto paving law.    Repeal of the Charter Act of 1913
completely terminated its force and effect.    All efforts to con-
tinue it in force were obviously futile.    Lewis' Suth. Stat. Con.
Sec. 285.    That repeal was an exercise of clear and unquestion-
able legislative authority.    In a state whose sovereign powers are
undisputed and whose legislative will is unhampered and un-
trammeled, it is beyond the powers of courts or individuals to
nullify laws authoritatively enacted by it, or to arrest their
operation.    Under such circumstances, it is repeated, there
can be no such thing as a de facto law.    A repealed law is no
longer a law.    It is a mere relic, resorted to sometimes on ques-
tions of interpretation.    It is a dead law susceptible of resur-
rection only by a proper exercise of legislative power, and the
courts cannot, by any action of theirs, keep life or vitality in
it for a minute after the repealing act becomes effective.    *Cur-
ran* v. *Owens,* 15 W. Va. 208; *Moore* v. *McNutt,* 41 W. Va. 695.
It is certainly as valueless as an unconstitutional law, which
has been declared to be no law.    *Norton* v. *Shelby Co.,* 118 U.
S. 425; Cooley Cons. Lim. p. 259.    As regards unconstitutional
acts, there are possible exceptions, but no court has ever noted
any in the case of a repealed statute containing no saving clause.

The refusal of the officers of the city to provide for the elec-
tion of new officers to fill the places provided for by the new
charter and the interposition of judicial powers to prevent
such election, may have resulted in the existence of de facto
officers, but such officers, if any, could validly exercise the
powers of the city, only by proceedure authorized and defined
by the corporate laws in force at the time.    If they had caused
the improvement to be made and assessed the cost agreebly to
the provisions of the new act, the assessment might have been
valid, as an act of de facto officers, but they did not do so.
They may have wrongfully held the offices, but, if so, they
held them only for execution of valid laws, not for administra-
tion of repealed or dead laws.

The saving clause found in sections 140 and 141 of Chapter

22, Acts of 1919, Municipal Charters, make no specific reference to special assessments. The former continues in force all valid ordinances previously passed and still effective. These are not of that class. The latter continues in full force and effect all contracts entered into by the city, or for its benefit, prior to the taking effect of the act. It also provides for continuance and perfection of all public work previously commenced and for completion of public improvements initiated under laws in force when the act became effective. To validate a void assessment, it is necessary to pass in some form, a curative statute. Such statutes usually disclose their nature and purpose, by some terms used in them. The irregularity or departure working the infirmity is ordinarily mentioned or referred to in some way. Such statutes are necessarily retroactive and there is a presumption against legislative intent to give a statute retroactive effect and operation, in the absence of the use of terms indicating it, even in the case of purely remedial statutes. *Harrison* v. *Harman,* 76 W. Va. 412. If given retroactive effect to the extent of validation of this assessment, sec. 141 of the charter Act of 1919 would validate or impose a tax. *City of Elkins* v. *Harper,* 82 W. Va. 377; *Heavner* v. *Elkins,* 69 W. Va. 255, 258. Taxing statutes impose burdens upon citizens against their will in favor of the public, and the public authorities frame them, wherefore they are generally interpreted and construed with a degree of strictness. Though they do not always fall within the rule of strict construction, perhaps, the intention of the legislature to impose the tax in question, in any case, must be disclosed by the terms of the taxing act. Cooley, Tax., pp. 452 to 464. Here, there is no reference to taxation or any assessments. Contracts are mentioned and continued in force and effect, and assessments may be incidents, attendants or consequences of contracts for street improvements, but they are not contracts between the city and the abutting property owner, within the ordinary meaning and acceptation of the term "contract". Technically, a special assessment is a tax or an imposition in the nature of a tax. In the popular sense, it is a lien on property imposed by law. To make the terms of the statute include it, the term must be stretched beyond both its technical or popular meaning. Nor is there

a word in the section importing intent to validate a void contract. To treat it as a validating act, it is necessary not only to give its terms an unwarranted scope, but also to give it retroactive effect in the absence of words indicative of intent to do so. Power and authority in the legislature to validate the assessment, by provision for a reassessment or otherwise, is not here denied, but the assertion that it has been validated rests largely, if not entirely, upon surmise and conjecture.

For the reasons stated, the decree complained of will be affirmed.

*Affirmed.*