MARY S. ANDERSON AND HER HUSBAND, R. L. ANDERSON, *Appellants*, v. CITY OF OCALA, A MUNICIPAL CORPORATION, *Appellee.*

Opinion Filed February 15, 1921.

Petition for Rehearing granted April 7, 1921

Decree Affirmed March 10, 1922.

1. The power exerted in imposing and collecting special assessments for the improvement of public streets of a city is the taxing power of the State.

2. The only limitations upon legislative power on the subject of taxation are such as may be found in either the State or Federal Constitution.

3. There is no express provision in the Constitution of this State upon the subject of special assessments by municipalities for local public improvements and there is no time limitation expressed in the Constitution upon the State's power of taxation.

4. Neither the Federal nor State Constitution expressly forbids the enactment of retroactive or retrospective laws, and such legislation is therefore valid unless invalid for some reason other than its retroactive effect.

5. Authority for making reassessments upon abutting property, in cases where original special assessments for public improvements by municipalities have been found unenforceable because of error or irregularity, may be upheld upon the theory that the improvements tend to enhance the value of abutting property and as a consequence there rests upon such property an economic and moral obligation to contribute its just proportion of the expense incurred in making such improvements and the failure of the original assessment does not operate to discharge such obligation.

6. One who purchases real estate against which an irregular and invalid but curable special assessment for a public improvement has been made between the date of an adjudication of such invalidity and that of the enactment of a law authorizing a reassessment of such property, takes it subject to liability for such reassessment.

7. Special assessments for public improvements may be levied upon an executed consideration, that is to say, for a public improvement already done, and an assessment for benefits from improvements previously made does not constitute a deprivation of property without due process of law.

8. An enforcement of the payment of a special assessment for a public improvement is not a deprivation of property without due process of law although no notice is given prior to the proceeding to enforce such assessment provided such proceeding is a judicial proceeding and due notice thereof is given to the owner of the property with full opportunity to be heard.

9. "Authority given municipalities to impose taxes and special assessments for municipal improvements should be strictly construed especially when it adversely affects the rights of property holders to be fully advised of the burdens to be put upon them; and any material departure from the express authority is fatal to the special assessment."

## On Petition for Rehearing.

The validation and ratification of an assessment or re-assessment upon abutting property by a municipality for public improvements which have been found unenforcable because of some irregularity or defect of procedure is within the power of the legislature.

## On Rehearing.

Where a statutory lien has accrued upon abutting property for street improvements, a subsequent sale of the property is subject to the lien if it has not been discharged by payment or otherwise.

An Appeal from the Circuit Court for Marion County; W. S. Bullock, Judge.

Decree Affirmed on Petition for Rehearing.

*Anderson & Anderson*, for Appellants;

*Frederick R. Hocker*, for Appellee.

WEST, J.—The City of Ocala brought this suit against Mary S. Anderson and R. L. Anderson, her husband, and Southern Florida Realty Company, a corporation, the object of the suit being to enforce the payment of an assessment made by the city upon a certain described lot of land fronting upon Magnolia Street in said city for its proportion of the amount expended by the city in paving such street.

The statutory authority for the city's action is Sections 4 and 5 of Chapter 4089, Acts of 1891, Laws of Florida, an act extending and enlarging the boundaries and powers of the municipality.

These sections are as follows:

"Sec. 4. The said City Council shall have power by ordinance to regulate, provide for and compel the construction and repair of sidewalks and pavements; and if the owner or owners of any lot or lots shall fail to comply with the provisions of such ordinance within such time as

may be prescribed therefor, the City Council may contract for the construction and repair of such sidewalks or pavement, and the amount contracted to be paid for the same by the city shall be a lien upon such lot or lots along which said sidewalk or pavement is constructed or repaired, and such amount may be assessed as a special tax against the lot or lots adjoining which such sidewalk or pavement shall be constructed or repaired, and the same may be enforced by suit at law or in equity, or the said amount may be recovered against the said owner or owners by a suit before any court of competent jurisdiction.

"Sec. 5. The City Council shall also have the power by ordinance to regulate, require and provide for the construction and repair of streets and for the grading and paving of the same, and in all cases when the said City Council shall determine to construct, pave, grade or repair any street or any part thereof requiring to be constructed, repaired, graded or paved, the city may order and have such work done, and the amount expended or to be paid therefor, shall be a lien on the lot or lots fronting or abutting on such street or as may be increased in value by any such improvement, *pro rata* according to the number of lineal feet of said lots fronting or abutting on such street, and may be enforced or recovered in the same manner as above set forth in relation to sidewalks and pavements; provided that the owners of property on each side of the street when such street shall be constructed, paved, graded or repaired shall only be liable for one-third of the actual cost of construction, paving, grading or repairing."

By Section 11 of Chapter 7204, Acts of 1915, Laws of Florida, re-assessment under these sections is authorized. This section is as follows:

"Sec. 11.   That the city council of the City of Ocala is hereby empowered to re-assess and re-make any assessment made against any real estate within the corporate limits of said city under sections four or five or four and five of Chapter 4089, Laws of Florida, in cases where the original assessment is unenforceable by reason of any error or irregularity in the making thereof."

The action of the city was by suit in equity.   The bill in substance alleges the ownership of the lot by the defendant Mary S. Anderson; that Section 5 of Chapter 4089 of the Laws of Florida authorizes the city to pave its streets and assess the lot or lots abutting on the streets so paved with not more than one third of the actual cost of such paving; that the city on the 20th day of April A. D. 1909 duly passed an ordinance requiring that portion of Magnolia Street within its corporate limits to be paved and making assessment upon abutting property for its proportion of the cost; that said Magnolia Street is a public street and the lot described is located on that portion of said street required to be paved by such ordinance; that in compliance with said ordinance said Magnolia Street was paved at a cost to the city of $1.86 per square yard, the work of paving being completed on the 16th day of November, A. D. 1909; that said lot abuts on said street 112 lineal feet, and one-third of the cost of paving the said portion of said street upon which said lot abuts is $300.89; that at the time of the paving of said street said lot was owned by the defendant Southern Florida Realty Company, a corporation, having been conveyed to it by the defendant R. L. Anderson and his wife Mary S. Anderson on the 5th day of November, 1904, and that subsequently, on the 3rd day of April, 1911, the said defendant corporation, by the defendant R. L. Anderson, its president, conveyed said lot to the

defendant Mary S. Anderson; that at the time of the paving the defendant R. L. Anderson was the president of the defendant corporation and either the said R. L. Anderson or Mary S. Anderson or both were large stockholders in said corporation and were such stockholders at the time of the completion of the said paving; that at the completion of said paving the city issued a special assessment certificate against said lot, but that said certificate was invalid and unenforceable; that a common law action for the purpose of enforcing the payment of said assessment was instituted by the city against the defendant R. L. Anderson on the 3rd day of May, 1910, and that judgment was entered in favor of said defendant; that the city is authorized to re-make and re-assess any assessment made by it against abutting property for the pavement of any street and against the owner of such property in cases where the original assessment is unenforceable by reason of error or irregularity; that the original assessment made against the lot described having been held unenforceable, the city on the 21st day of September A. D. 1915, passed a resolution re-assessing said property for its lawful proportion of the expense of such improvement; that pursuant to said resolution and ordinance and pursuant to the laws of the State, the city issued a special assessment certificate against said lot; that the sum of $300.89 named in said certificate is the pro rata share of said lot of the cost of the paving of said street according to the number of feet that said lot abuts on said street and that said amount was duly fixed in compliance with Sec. 5 of Chap. 4089 and the terms of the ordinance of the city passed pursuant thereto; that no part of said sum has ever in any way been paid; that said amount is now due. owing and payable to the city and the city has a lien superior to all other liens on said lot for said amount; that by reason of the paving of said street said lot was

especially benefitted and enhanced in value and that said paving was done with the knowledge and acquiescence of the president of the corporation, who was its owner at the time the paving was done and who is the husband of the present owner to whom said corporation conveyed said lot during the pendency of the suit on the original assessment; that said city has fully paid all of the costs of said paving and that notice of the issuance of the special assessment certificate sued on has been served on the defendant Mary S. Anderson and that the officials of the city have duly complied with all the requirements of law and ordinance with respect thereto.

The prayer is that the city be declared to have a lien against the property described for the amount of the assessment; that said lien be declared to be superior to all other liens on said property; that the said lien be declared superior to the claim of title of said Mary S. Anderson and all others to said property; that the city be granted a decree requiring the defendants to satisfy said decree within a short day or that the property be sold in accordance with law and the practice in equity. to satisfy said decree; and that in event said property be sold to satisfy said decree defendants and all others claiming under them since the commencement of the suit be foreclosed of all equity of redemption in said property; for general relief, and if necessary for a writ of assistance for possession of said land.

A copy of the ordinance which provided for the paving, the assessment upon abutting property of its proportion of the amount expended in making the improvement, the issuance of special assessment certificates against such property for amounts assessed thereon, and for the collection of the same, was attached to the bill and made a part

thereof, and a copy of the resolution of the city council reciting the grounds of the alleged invalidity of the original special assessment certificate and declaring it to be unenforceable and re-assessing said property for the amount originally assessed upon it and authorizing the issuance of a certificate therefor, and a copy of the certificate so issued, were attached to the bill and each was made a part therof.

The defendants demurred to the bill and the demurrers were overruled. Pleas were filed by all defendants which were held insufficient as to the individual defendants but good as to the corporation defendant, and it was ordered that said corporation defendant be required to plead no further in said cause. Amended pleas were filed by defendants which upon a hearing were held to be insufficient.

The defendants thereupon answered the bill and also filed a cross-bill in which it was sought upon various grounds to have all the proceedings taken by the city with respect to such assessment declared void and of no effect, the property discharged of said assessment and said proceeding in all respects vacated and set aside. The cross-bill was demurred to and a motion was made to strike it from the files in said cause. The motion to strike was denied but the demurrer was sustained and the cross-bill dismissed. There was a motion to strike and exceptions to certain designated portions of the answer. The motion to strike was granted and the exceptions were sustained. From this order and the order sustaining the demurrer to defendants' cross-bill this appeal was taken.

The assignments of error challenge the ruling striking out certain portions of the answer contained in paragraphs 8, 10, 11, 12 and 13, in sustaining exceptions to the answer

and in sustaining the demurrer to the cross-bill. To set out the stricken portions of the answer would extend this statement into too great length.

The several questions presented may all be determined by an application of certain well-settled principles. Summarized, they set up the defenses (1) that the city is not authorized to make re-assessments where original assessments have failed; (2) the statute of limitations; (3) that the re-assessment should be by ordinance and not by resolution and that the re-assessment by resolution under the provisions or the ordinance making the assessment was authorized; (4) that the defendant Mary S. Anderson is an innocent purchaser for value of the lot without notice of any obligation resting upon it for the improvement of the street and that the city is without authority to enforce the assessment against such property in her hands; and (5) that Chapter 7204 is unconstitutional and void because the legislature enacting it was not legally organized.

With respect to the ownership of the lot, it appears from the allegations of the bill that prior to the 5th day of November A. D. 1904 it was owned by the defendant R. L. Anderson; that upon that date he, by deed in which the defendant Mary S. Anderson, his wife, joined, conveyed the lot to defendant Southern Florida Realty Company, a corporation; and that subsequently, on the 3rd day of April A. D. 1911, the defendant corporation, by the defendant R. L. Anderson, its president, conveyed said lot to the defendant Mary S. Anderson. So that when the paving upon the street upon which this lot abutted was done in the year 1909 the title to the lot was in the Southern Florida Realty Company, a corporation, and not in the defendant R. L. Anderson, and therefore the original assessment made upon this lot as the property of R. L. Anderson was held

to be irregular and unenforceable. The question then is; did the City of Ocala have the power in 1915 to re-assess said property for its proportionate amount of the sum expended in the paving and improvement of such street, the original assessment having failed and the lot in the mean-time having been conveyed to the defendant Mary A. Anderson, and if so, is the re-assessment for such improvement, after the lot has passed into the hands of such third party, and an enforced payment of same by appropriate legal proceedings a deprivation of property of the owner without due process of law.

The quoted statutory provisions under which the city acted in making the assessment have been held valid by this court (Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775). The power exerted in imposing and collecting special assessments for the improvement of the public streets of a city is the taxing power of the State. Dillion on Municipal Corporations, §1431; Page & Jones on Tax, by assessment, §8; City of Elkins v. Harper, 82 W. Va. 377, 95 S. E. Rep. 1033; N. Y. C. & St. L. Ry. Co. v. City of Hammond, 170 Ind. 493, 83 N. E. Rep. 244; Wabash E. Ry. Co. v. Com'rs East Lake etc. Drainage Dist., 134 Ill. 384, 25 N. E. Rep. 781; Meier v. City of St. Louis, 180 Mo. 391, 79 S. W. Rep. 955; Sargent v. Tuttle, 67 Conn. 162, 34 Atl. Rep. 1028; Shaler v. McAleese, 73 N. J. Eq. Rep. 536, 68 Atl. Rep. 416; White v. Gove, 183 Mass. 333, 67 N. E. Rep. 359.

The only limitations upon legislative power on the subject of taxation are such as may be found in either the State or Federal constitution. In Lainhart v. Catts, 73 Florida. 735, 75 South. Rep. 47, this court said: "The power of the legislature in matters of taxation is unlimited, except as restricted by constitutional provisions. This is:

one of the attributes of sovereignty which the people have placed in its hands, and they have entrusted its exercise to its discretion, either in the manner, or to the extent to which it is to be applied. This charge imposed upon the land is based upon the theory that it is in return for the benefit received by the property assessed, directly or indirectly.'' The court was there dealing with a statute imposing a special assessment upon lands within a drainage district for the purpose of draining and reclaiming the lands upon which the assessment was imposed, but the principle under consideration was the same as that involved here.

There is no express provision in the constitution of this state upon the subject of special assessments by municipalities for local public improvements (Lainhart v. Catts, *supra;* Anderson v. City of Ocala, *supra;* Stewart v. Deland-Lake Helen, etc. Dist. 71 Fla. 158, 71 South. Rep. 42) and there is no *time* limitation expressed in the constitution upon the state's power of taxation. · Nor is the passage of retroactive or retrospective laws forbidden by any provision of the federal or state constitution, and such laws will not be held invalid because of their retroactive effect. Board of Comm'rs, etc. v. Forbes Pioneer Boat Line, 80 Fla. 252, 86 South. Rep. 199 ; Kentucky Union Co. v. Commonwealth of Kentucky, 219 U. S. 140, 55 L. Ed. 137, 31 Sup. Ct. Rep. 171; Cooley's Const. Lim. (7th ed.) 529.

Power was given the City of Ocala by statute to re-assess property within its corporate limits in cases where original special assessments for public improvement made under the provisions of Sections 4 and 5 of Chapter 4089 were found unenforceable by reason of any error or irregularity. Authority for making re-assessments in such cases has generally been upheld upon the theory that the improve- ,

ment tends to enhance the value of abutting property, and as a consequence there rests upon such abutting property an economic and moral obligation to contribute its just proportion of the expense incurred in the making of such improvement and the failure of the original assessment does not operate to discharge such obligation.   Spencer v. Merchant, 125 U. S. 345; Lombard v. West Chicago Park Co., 181 U. S. 33; City of Elkins v. Harper, *supra;* Mayor etc. of Baltimore v. Ulman, 79 Md. 469, 30 Atl. Rep. 43; Newman v. City of Emporia, 41 Kan. 583, 21 Pac. Rep. 593; State *ex rel.* Doyle v. City of Newark, 34 N. J. Rep. 236; State v. Mayor, etc. of Newark, 52 N. J. 138, 18 Atl. Rep. 572.   In the last cited case the Supreme Court of New Jersey was considering the question of the validity of a statute authorizing a re-assessment of property for public improvements in lieu of an assessment theretofore illegally made.   Speaking through Mr. Justice GARRISON, the court said:   ''The purpose of this act is that land benefitted by an authorized public work shall not escape the payment of its proportionate share of the expenses thereof.   The commission of adjustment is erected with the sole object of securing this end.   Its jurisdiction is accordingly shaped by the legislative scheme under consideration.   The essentials of that jurisdiction are that a public improvement has been made; that an assessment therefor has been made and imposed, or attempted so to be; and that payment thereof has not been had.   Where these elements co-exist, the authority of the commissioners to proceed is assured, without regard to the invalidity of the legislation under which the assessment was made.   The nullification of an invalid assessment, whether for inherent defects or because it rests upon unconstitutional legislation, must not be confounded with the discharge of the land from its liability to contribution.   The matter of assessment is legislative; the ques-

tion of liability is not. The basis of all municipal legislation of this class, as well as that of the fundamental right out of which it springs, is the value imparted to the land by the improvement; hence the liability of the land to pay the assessment arises as an incident to the improvement, and does not depend upon the validity of the legislative methods provided for its enforcement. If no such legislation be in existence, or, what is the same thing, if supposed legislation prove to be unconstitutional and void, the liability remains in the form of the responsibility of the land-owner to future legislative action looking to the enforcement of contribution.''

Having found that the imposition of a special assessment for public improvement is an exertion of the taxing power of the State; that there is no limitation upon the exercise of such power when properly exercised except such as may be contained in the State or Federal constitution; that there is no express provision in the constitution on the subject of special assessments; and that re-assessments may be made in cases where original assessments are unenforceable because of irregularities; we recur to the original question of whether such re-assessment may be made and enforced, the property, subsequently to the improvement, having been conveyed to another.

In Seattle v. Kelleher, 195 U. S. 351, the Supreme Court of the United States decided the point presented by this question and held directly to the contrary to appellants' contention. The facts in that case were similar to the facts in the case under consideration and the principle announced is applicable. The court said: ''We have said enough in our opinion to show that the enforcement of the assessment lien could not be prevented by the original owner. It is urged, however, that a different rule could

be applied in favor of one who purchased the land under the circumstances stated above. But the attempt to liken taxation, whether general or special, to the enforcement of a vendor's lien, and thus to introduce the doctrine concerning *bona fide* purchasers for value, rests on a fallacy similar to that which we have mentioned above, which would deny the right to tax upon an executed consideration. A man cannot get rid of his liability to a tax by buying without notice. See Tallman v. Janesville, 17 Wisconsin 71, 76; Cooley, Taxation, 3d ed. 527, 528. Indeed he cannot buy without notice, since the liability is one of the notorious incidents of social life. In this case the road was cut through the plaintiff's land, and, if he had looked, was visible upon the ground. Whether it had been paid for was for him to inquire. The history of what had happened would have suggested that it was not improbable that sooner or later a payment must be made.''

The transfer of the lot between the date of the original assessment, or the adjudication of its invalidity, and the date of the re-assessment affected in no way the obligation resting upon it to contribute to the public improvement by which its value had been enhanced, and the purchaser could acquire no rights superior to that of the State to enforce by the exercise of its taxing power this obligation. The purchaser must be presumed to have taken the property with notice of the State's power of taxation and could obtain no interest in the property against this known power.

''Special assessments may be levied upon an executed consideration, that is to say, for a public work already done,'' (Seattle v. Kelleher, *supra*) and an assessment for . benefits derived from improvements previously made does not constitute a deprivation of property without due pro-

cess of law.   City of Elkins v. Harper, *supra;* Wagner v. Baltimore, 239 U. S. 207.

Neither is the enforcement of the payment of a special assessment for public improvements a deprivation of property without due process of law although no notice is given prior to the proceeding to enforce such assessment if such proceeding is a judicial proceeding and due notice thereof is given the owner of the property with full opportunity to be heard.   Anderson v. City of Ocala, *supra;* Embree v. Kansas City, etc. Road Dist., 240 U. S. 242; Hagar v. Reclamation District, 111 U. S. 701.

What we have said disposes of all the questions presented except the contention that the re-assessment should have been made by ordinance and not by resolution of the city council.   Section 5 of Chapter 4089 gives to the city power "by ordinance" to provide for the paving of its streets and to require abutting property to contribute its just proportion to the expense of such improvement.   The later statute, Section 11 of Chapter 7204, simply authorizes re-assessments upon such property where the original assessments have failed, but does not expressly provide the manner of making such assessments.   Construing the two statutes together, it seems to us to be clear that the re-assessments should be made in the same manner that the original assessments were made, that is to say, by ordinance, and this being true, the re-assessments made by resolution and not by ordinance were not in compliance with the law.   In City of Gainesville v. McCreary, 66 Fla. 507, 63 South. Rep. 914, it was held that "authority given municipalities to impose taxes and special assessments for municipal improvements should be strictly construed especially when it adversely affects the rights of property holders to be fully advised of the burdens to be put upon them; and any

matèrial departure from the express authority is fatal to the special assessment." Lewis Sutherland Stat. Const. (2 ed.) §541; Greensboro v. McAdoo, 112 N. C. 358, 17 N. E. Rep. 359; Oshkosh City Ry. Co. v. Winnebago Co., 89 Wis. 435, 61 N. W. Rep. 1107.

There was error, therefore, in sustaining the exceptions to paragraph 11 of the answer setting up the invalidity of the attempted re-assessment because it was made by resolution and not by ordinance. In other respects the rulings complained of are in accord with the views herein expressed, but for the error pointed out the order appealed from must be reversed.

Reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.

## On Petition for Rehearing.

WEST, J.—Upon application for a rehearing attention is called to Section 17, Chatper 7676, Special Acts of 1917, Laws of Florida, which was designed, among other things, to validate and confirm assessments or reassessments for public improvements theretofore made by the city of Ocala. This section is in the following language: "That all ordinances, resolutions, contracts, outstanding bonds, appropriations and all other acts of the city of Ocala, or the officers thereof, heretofore done, passed, made or performed, be, and the same are, hereby ratified, validated and confirmed; and all assessments of said city for the purpose of taxation, and all assessments or re-assessments for street or sidewalk improvements heretofore made by said city, be, and the

same are, hereby validated, ratified and confirmed." That the validation and ratification of an assessment or re-assessment upon abutting property by a municipality for public improvements such as that here involved, which has been found unenforceable because of some irregularity or defect in procedure, is within the power of the Legislature, is well established in this jurisdiction. Smith v. Longe, 20 Fla. 697; City of Jacksonville v. Basnett, 20 Fla. 525; Parker v. City of Jacksonville, 37 Fla. 342, 20 South. Rep. 538; Middleton v. City of St. Augustine, 42 Fla. 287, 29 South. Rep. 421, 89 Am. St. Rep. 227; Potter v. Lainhart, 44 Fla. 647, 33 South. Rep. 251; Givens v. County of Hillsborough, 46 Fla. 502, 35 South. Rep. 88; City of Orlando v. Giles, 51 Fla. 422, 40 South. Rep. 834; Cranor v. Com'rs Volusia County, 54 Fla. 526, 45 South. Rep. 455; Charlotte Harbor & Northern Ry. Co. v. Welles, 78 Fla. 227, 82 South. Rep. 770; Board of Com'rs v. Forbes Pioneer Boat Line, 80 Fla. 252, 86 South. Rep. 199; Schultz v. State ex rel. Swearingon, 80 Fla. 564, 86 South. Rep. 428.

Accordingly, a rehearing is granted on the question of the effect of this statute upon the re-assessment complained of, and the question being considered, it appearing that the statute quoted cured the defects pointed out in the opinion, upon which point the decree was reversed, in view of this curative act the decree appealed from is affirmed.

Affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.

## On Rehearing.

PER CURIAM.—It appears that at the time of the pavement the property was owned by the corporation, of which corporation Mrs. Anderson's husband, R. L. Anderson, was president; that a certificate covering the amount due was issued against the lot in the name of R. L. Anderson, the husband, as owner; that the paving bill and lien were not paid or discharged; that subsequently the corporation, by R. L. Anderson as president, conveyed the lot to Mrs. Anderson, the wife of the president of the company who made the deed.

The statute provides that "the city may order and have such work done, and the amount expended or to be paid therefor, shall be a lien on the lot or lots fronting or abutting on such street," etc. Sec. 5, Chap. 4089, Acts of 1891.

As the lien attached when the amount was paid by the city or when the amount ascertained "to be paid therefor" while the property was owned by the corporation, a subsequent conveyance of the property was subject to the lien, even though the certificate evidencing the amount due may have been irregular or even void. The lien having attached upon doing the work and ascertaining the amount due therefor, it could be enforced under the subsequent statutes without violating any property rights of Mrs. Anderson who took subject to the lien that had already attached.

This case differs from Bloxham v. Florida Central, etc. Co., 35 Fla. 625, 17 South. Rep. 902, insofar as the lien is concerned, because there no lien had attached and no steps had been taken to make an ordinary property assessment for general governmental purposes. Here there was a lien created by statute upon the making of the improvement that specially benefitted the particular land on which the

lien was imposed by law. So that even if the doctrine of bona fide purchaser for value without notice should be conceded to be applicable to this class of cases, as contended for, under the facts of this case appellants are not in position to invoke it.

The decree appealed from is affirmed.

All concur.