Mr. Richard C. Williams, Jr. City Attorney City of New Port Richey 122 North Boulevard New Port Richey, Florida 34652
Dear Mr. Williams:
You have asked substantially the following questions:
 1. Under what circumstances is the City of New Port Richey "legally obligated for providing capital improvements for water or sewer facilities within an unincorporated area of the county" so as to permit the municipality to recover the costs of capital improvements by levying and collecting special assessments on extra-municipal property under s. 170.01, F.S.?
 2. Whether the City of New Port Richey is authorized by s. 170.01, F.S., to undertake construction outside its municipal boundaries and levy and collect special assessments against those properties which are specially benefited by such construction.
In sum:
 1. The City of New Port Richey is "legally obligated" to act pursuant to s. 170.01, F.S., if it has entered into an agreement or otherwise bound or pledged itself to provide capital improvements for water or sewer facilities within an unincorporated area of the county and such an obligation would form the basis of a court judgment if not met.
 2. The City of New Port Richey is authorized by s. 170.01, F.S., to undertake capital improvements for water or sewer facilities outside its corporate limits and levy and collect special assessments against those properties which are specially benefited by such improvements if the city is "legally obligated" to make such improvements.
According to your letter the City of New Port Richey has operated a water and sanitary sewage system since 1927. In 1978 the New Port Richey City Council passed an ordinance creating a municipal water and sanitary sewage utility district pursuant to Ch. 180, F.S. The service area established by this ordinance extends outside the city limits but is within five miles of such limits.
The city is currently considering the construction of a sanitary sewage system to a residential area, a portion of which is within the corporate limits of New Port Richey and a portion of which is outside the city limits but within the service area established by the ordinance. The city must determine whether the sanitary sewage system may be financed by levying special assessments against all the properties benefited by the system both inside and outside the corporate limits of the City of New Port Richey.
Question One
Special assessments are charges against particular property which are imposed because that property derives some special benefit from the expenditure of the money collected by the assessment in addition to the general benefit accruing to all property of citizens.[1] The power to make special assessments can be exercised only for special improvements and cannot be exercised to burden particular property and the owners thereof with the cost of general and governmental benefits and expenditures.[2] Thus, special assessments cannot be imposed to pay for an improvement which is primarily of general public benefit.[3]
Special assessments are "a peculiar species of taxation" and are levied under ss. 1(a) and (9)(a), Art. VII, State Const.[4]
Absent specific statutory authority therefor, a special assessment cannot be imposed.[5]
Section 170.01(1), F.S., provides in part that:
 Any municipality which is legally obligated for providing capital improvements for water or sewer facilities within an unincorporated area of the county may recover the costs of the capital improvements by levying and collecting special assessments for the purposes authorized in this section on the specially benefited property; however, collections of the special assessment shall not take place until the specially benefited property connects to the capital improvement.[6]
(e.s.)
The emphasized language, supra, was added by s. 32, Ch. 83-204, Laws of Florida. The statute does not include a definition of "legally obligated" as used in Ch. 170, F.S. An examination of the legislative history of this amendment does not provide any additional guidance as to what the Legislature considered to be legal obligations for purposes of s. 170.01(1), F.S.[7]
Where a statute does not specifically define words of common usage, such words must be construed in their plain and ordinary sense.[8]
A "legal obligation" has been defined as "[a]n obligation that would form the basis of a judgment in a court of competent jurisdiction. . . ."[9] A legal obligation has been compared with or distinguished from a duty.[10]
The Supreme Court of Florida has stated that an obligation in law is a bond with a connected condition and a penalty for nonfulfillment and, similarly, that such an obligation is a bond containing a penalty with a condition attached for the payment of money, performance of covenants, or the like.[11]
Thus, if the City of New Port Richey has entered into an agreement or otherwise bound or pledged itself to provide capital improvements for water or sewer facilities within an unincorporated area of the county and such an obligation would form the basis of a court judgment if not performed, the city is "legally obligated" to act under s. 170.01(1), F.S.
A determination of whether a particular factual situation would give rise to a "legal obligation" of the city must ultimately be made by a court.
Question Two
As discussed herein, s. 170.01, F.S., authorizes a municipality which is "legally obligated" to provide capital improvements for water and sewer facilities outside its corporate limits to recover the costs of such improvements by levying and collecting special assessments on the specially benefited property.
No other provision of s. 170.01, F.S., authorizes a municipality to levy and collect special assessments in the unincorporated area of the county for other types of improvements or under other circumstances. A municipality cannot impose a special assessment other than as specifically prescribed by statute.[12]
Therefore, the City of New Port Richey may utilize s. 170.01, F.S., to undertake capital improvements for water or sewer facilities outside its municipal boundaries and levy and collect special assessments against properties specially benefited by such construction dependent on the city's legal obligation to make such improvements.
Sincerely,
Robert A. Butterworth Attorney General
(gh)
[1] See, AGO's 84-48 and 82-103. See generally, 70 Am.Jur.2d Special or Local Assessments ss. 1 and 18 (1967); 14 McQuillin, Municipal Corporations ss. 38.02, 38.32 and 38.124 (1970).
[2] See, AGO 82-103.
[3] Cf., s. 170.01(2), F.S., which states that special assessments levied pursuant to this section shall be levied only on benefited real property at a rate based on the special benefit accruing to such property from such improvements when the improvements funded by the assessment provide a benefit which is different in type or degree from benefits provided to the community as a whole.
[4] See, AGO's 84-48 and 80-87; Jackson v. City of Lake Worth,23 So.2d 526 (Fla. 1945); State v. Caldwell, 35 So.2d 642 (Fla. 1948); Anderson v. City of Ocala, 91 So. 182 (Fla. 1922).
[5] See, AGO 84-48.
[6] And see, s. 170.01(1)(b) and (g), F.S., which authorize a municipality to "[o]rder the construction, reconstruction, repair . . . and upgrading of . . . sanitary sewers. . . ." and to provide for payment of the costs of such improvements by levying and collecting special assessments on the specially benefited property.
[7] See, Analysis of HB 1321 by Committee on Finance and Taxation, Florida House of Representatives, 1983; 1983 fiscal note on HB 1321, Committee on Finance and Taxation, Florida House of Representatives, 1983; audio tapes of debate on Senate Amendment 11 and House Amendment 1 to HB 1321, June 2, 1983.
[8] See, Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984); Citizens of State v. Public Service Commission, 425 So.2d 534 (Fla. 1982); and Milazzo v. State, 377 So.2d 1161 (Fla. 1979), on remand, 379 So.2d 159 (3 D.C.A. Fla., 1980).
[9] 52A C.J.S. Legal.
[10] Id. And see, Black's Law Dictionary 1041 (rev. 4th ed. 1968) (A legal obligation against the state is an obligation which would form the basis of a judgment against the state in a court of competent jurisdiction should the Legislature permit the state to be sued; a legal obligation to support a parent exists if one is bound to support a parent under a statute.)
[11] Maxwell v. Jacksonville Loan and Improvement Company,34 So. 255, 267 (Fla. 1903). Cf., State v. Citrus County, 157 So. 4, 6
(Fla. 1934) (The obligation of a contract is the law or duty which binds the parties to perform their agreement; such an obligation embraces within its purview whatever is undertaken to be done as a legal, as distinguished from a moral, duty to perform the terms and conditions of what has been agreed upon between the parties.)
[12] See, AGO's 84-48 and 80-87.