Mr. Murray H. Dubbin Miami Beach City Attorney 1700 Convention Center Drive Fourth Floor Miami Beach, Florida 33139
Dear Mr. Dubbin:
On behalf of the Mayor and City Commission of Miami Beach, you have asked for my opinion on substantially the following question:
When may the governing body of a municipality that proposes to levy and collect special assessments pursuant to Chapter 170, Florida Statutes, begin collecting assessments against the properties that are specially benefited by the improvements?
In sum:
Section 170.03, Florida Statutes, provides that the governing authority of the municipality is responsible for determining when special assessments are to be paid. The statutes recognize that such payments may be required to begin before or after completion of the improvements for which the special assessments are imposed.
According to information you have supplied, the City of Miami Beach is currently engaged in discussions with various homeowners and neighborhood associations throughout the city regarding the levying and collection of special assessments as provided in Chapter 170, Florida Statutes, to fund the placement of utility services underground. You are unsure when the city may begin collecting the assessments it is authorized to levy for these purposes.
Chapter 170, Florida Statutes, provides a supplemental and alternative method for making local improvements.[1] Section170.01(1)(d), Florida Statutes, authorizes any Florida municipality to
"[p]ay for the relocation of utilities, including the placement underground of electrical, telephone, and cable television services, pursuant to voluntary agreement with the utility, but nothing contained in this paragraph shall affect a utility's right to locate or relocate its facilities on its own initiative at its own expense[.]"
Thus, the provisions of this chapter may be utilized for the relocation of utility services underground.
Special assessments may be levied only for the purposes set forth in section 170.01, Florida Statutes, and only "on benefited real property at a rate of assessment based on the special benefit accruing to such property from such improvements when the improvements funded by the special assessment provide a benefit which is different in type or degree from benefits provided to the community as a whole."[2] When the governing authority of the municipality determines to make any of the public improvements authorized in section 170.01, Florida Statutes, and defray the expense of those improvements by the imposition of a special assessment, section 170.03, Florida Statutes, requires that the municipality pass a resolution making certain findings. The resolution must
"stat[e] the nature of the proposed improvement, designat[e] . . . the location of the utilities, . . . and the part or portion of the expense thereof to be paid by special assessments, the manner in which said assessments shall be made, when said assessments areto be paid, what part, if any, shall be apportioned to be paid from the general improvement fund of the municipality; and said resolution shall also designate the lands upon which the special assessments shall be levied . . . Such resolution shall also state the total estimated cost of the improvement. Such estimated cost may include the cost of construction or reconstruction, the cost of all labor and materials, the cost of all lands, property, rights, easements, and franchises acquired, financing charges, interest prior to and during construction and for 1 year after completion of construction, discount on the sale of special assessment bonds, cost of plans and specifications, surveys of estimates of costs and of revenues, cost of engineering and legal services, and all other expenses necessary or incident to determining the feasibility or practicability of such construction or reconstruction, administrative expense, and such other expense as may be necessary or incident to the financing herein authorized." (e.s.)
Section 170.03, Florida Statutes, recognizes the discretion allowed the municipal governing body in determining the terms of a special assessment, including when to require the assessment be paid.[3]
Section 170.05, Florida Statutes, requires that the municipality, once it has adopted the resolution providing for the special assessment, shall publish the resolution in a local newspaper. Upon the adoption of the resolution, the municipal governing authority
"shall cause to be made a preliminary assessment roll in accordance with the method of assessment provided for in said resolution, which assessment roll shall be completed as promptly as possible; said assessment roll shall show the lots and lands assessed and the amount of the benefit to and the assessment against each lot or parcel of land, and, if said assessment is to be paid in installments, the number of annual installments in which the assessment is divided shall also be entered and shown upon said assessment roll."[4]
Upon completion of this preliminary assessment roll, the municipality must fix a time and place "at which the owners of the property to be assessed or any other persons interested therein may appear before said governing authority and be heard as to the propriety and advisability of making such improvements, as to the cost thereof, as to the manner, as to the manner of payment therefor, and as to the amount thereof to be assessed against each property so improved."[5] The owner of each property to be improved by the project must receive 30 days notice in writing of the time and place of the meeting. The notice must include the amount of the assessment and shall be served by mailing a copy to each of the property owners at his or her last known address. Notice of the meeting must also be given by publication in a local newspaper. The notice must describe the streets or other areas to be improved and advise all persons interested that the description of each property to be assessed and the amount to be assessed to each piece or parcel of property may be determined at the office of the clerk of the municipality.[6]
At the hearing on the preliminary assessment, the governing body of the municipality must meet and hear testimony from affected property owners as to "the propriety and advisability of making the improvements and funding them with special assessments on property."[7] The governing body must then make a final decision on whether to levy the special assessments. Section 170.08, Florida Statutes, provides further that:
"Thereafter, the governing authority shall meet as an equalizing board to hear and consider any and all complaints as to the special assessments and shall adjust and equalize the assessments on a basis of justice and right. When so equalized and approved by resolution or ordinance of the governing authority, a final assessment roll shall be filed with the governing authority of the municipality, and such assessments shall stand confirmed and remain legal, valid, and binding first liens upon the property against which such assessments are made until paid; however, upon completion of the improvement, the municipality shall credit to each of the assessments the difference in the assessment as originally made, approved, and confirmed and the proportionate part of the actual cost of the improvement to be paid by special assessments as finally determined upon the completion of the improvement, but in no event shall the final assessments exceed the amount of benefits originally assessed."
The statute allows a discount for the payee's proportionate share of the project's bond financing costs to be paid to any land owner against whom a special assessment has been levied if payment in full of any assessment is received during the period prior to the time such financing costs are incurred.
Section 170.09, Florida Statutes, provides that the special assessments constitute a lien until they are paid:
"The special assessments shall be payable at the time and in themanner stipulated in the resolution providing for the improvement; shall remain liens, coequal with the lien of all state, county, district, and municipal taxes, superior in dignity to all other liens, titles, and claims, until paid; shall bear interest, at a rate not to exceed 8 percent per year, or, if bonds are issued pursuant to this chapter, at a rate not to exceed 1 percent above the rate of interest at which the improvement bonds authorized pursuant to this chapter and used for the improvement are sold, from the date of the acceptance of the improvement; and may, by the resolution aforesaid and only for capital outlay projects, be made payable in equal installments over a period not to exceed 30 years notwithstanding any special act to the contrary, to which, if not paid when due, there shall be added a penalty at the rate of 1 percent per month, until paid. However, the assessments may be paid without interest at any time within 30 days after the improvement is completed and a resolution accepting the same has been adopted by the governing authority."[8] (e.s.)
Thus, the terms of the various provisions of Chapter 170, Florida Statutes, authorize the imposition of special assessments and recognize that these payments may be made prior to or after the completion of any such improvements.[9]
In light of the specific language of section 170.03, Florida Statutes, and other provisions of Chapter 170, Florida Statutes, it is my opinion that it is the responsibility of the City of Miami Beach to determine when the special assessments it has levied for the placement of underground utilities must be paid.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Section 170.21, Fla. Stat., specifically provides that "[t]his chapter . . . shall be deemed to provide a supplemental, additional, and alternative method of procedure for the benefit of all cities, towns, and municipal corporations of the state, whether organized under special act or the general law, and shall be liberally construed to effectuate its purpose."
[2] Section 170.01(2), Fla. Stat. And see, s. 170.201, Fla. Stat., providing additional authority for the imposition of special assessments for certain capital improvements and municipal services.
[3] An exception appears in section 170.01, Fla. Stat., which requires that a municipality which is legally obligated to provide capital improvements for water within an unincorporated area of the county may not collect the special assessments levied for this purpose "until the specially benefited property connects to the capital improvement."
[4] Section 170.06, Fla. Stat.
[5] Section 170.07, Fla. Stat.
[6] Section 170.07, Fla. Stat., and see, s. 170.04, Fla. Stat., requiring that the municipality file with the city clerk an assessment plat "showing the area to be assessed, with plans and specifications, and an estimate of the cost of the proposed improvement, which assessment plat, plans and specifications and estimate shall be open to the inspection of the public."
[7] Section 170.08, Fla. Stat.
[8] And see, s. 170.10, Fla. Stat., providing for legal proceedings instituted upon failure of property owner to pay special assessment or interest when due, foreclosure on such property, and service of process.
[9] See generally, 48 Fla. Jur.2d Special Assessments s. 5, citing Anderson v. Ocala, 91 So. 182 (Fla. 1921), recognizing the authority of a local government to impose special assessments upon an executed consideration, that is, for a public work or improvement already completed.